# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# NEWARK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | HON. MADELINE COX ARLEO |
| | : | |
| Plaintiff, | : | CASE NO. 19-246 |
| | : | |
| | : | DEFENDANT'S MOTION TO DISMISS |
| v. | : | COUNTS 1 THROUGH 7 OF THE |
| | : | SUPERSEDING INDICTMENT WITH |
| CREAGHAN HARRY, | : | RESPECTS TO THE ANTI-KICKBACK |
| | : | STATUTE AND TO ADJUDGE THAT |
| Defendant. | : | STATUTE UNCONSTITUTIONAL AS |
| _____ | : | APPLIED; AND TO DISMISS COUNTS |
| | | 8 THROUGH 11 SINCE THE COURT |
| | | IS WITHOUT JURISDICTION WITH |
| | | RESPECTS TO THOSE COUNTS |

PLEASE TAKE NOTICE, that on a date and time decided by the Court, in the MLK, Jr. Federal Bldg and Courthouse in Newark, New Jersey, the undersigned counsel, Isaac Wright, Jr., Esq., on behalf of Defendant, Creaghan Harry, will move before the Honorable Madeline Cox Arleo, for an Order declaring that Defendant's conduct does not invoke federal jurisdiction under 42 U.S.C. § 1320(a)–7(b)(2) or that 42 U.S.C. § 1320(a)–7(b)(2) unconstitutional as applied, dismissing Counts 1 through 7 with respects to that statute as well as an Order dismissing Counts 8 through 11 for lack of jurisdiction.

Defendant will rely on the following arguments in support of this motion.

## Background

Defendant was arrested in the Southern District of Florida on April 9, 2019, on an Indictment charging that he conspired to violate the federal Anti-Kickback Statute, among related allegations.

The Indictment alleged a nuanced theory of health care corruption involving referrals of doctors' prescriptions for orthotic braces in exchange for service fees. (See generally Indictment of April 5, 2019, ¶¶ 8-9 [**ECF. No 1**].) At Defendant's initial appearance that day, his attorney entered only a temporary appearance as counsel. (See United States v. Harry, 9:19-mj-8129, S.D. Fla. [**ECF. No. 3**]).

The magistrate judge then ordered Defendant's commitment to another district, transferring the case to the District of New Jersey. (See United States v. Harry, 9:19-mj-8129, S.D. Fla. [**ECF No. 6**]).

On April 25, 2019, after a nine-minute hearing addressing only the jurisdictional issue, the magistrate judge denied Defendant's motion and ordered that the transfer to New Jersey be completed. (See United States v. Harry, 9:19-mj-08129, S.D. Fla. [**ECF No. 13**]).

On May 23, 2019, Defendant appeared in this District before U.S. Magistrate Judge Michael A. Hammer for his initial appearance and entered a plea of not guilty. (See **ECF No. 20**).

On August 10, 2021, a federal grand jury returned a superseding indictment. (**ECF No. 97**). The superseding indictment included identical charges to the original indictment and added a tax evasion count. See id.

On August 23, 2021, Defendant was arraigned on the superseding indictment and entered a plea of not guilty.

Defendant now moves to dismiss that indictment.

## LEGAL ARGUMENT

I.  **42 U.S.C. § 1320(a)-7(b)(2) Is Unconstitutional As Applied To Defendant, Who Provided A Telemedicine Service That Connected Patients To Doctors For Medical Consultation—A Service For Which Payment Was Not Made Under A Federal Health Care Program.**

The Anti–Kickback Act (AKA) provides in relevant part:

> (2) **whoever knowingly and <u>willfully offers or pays any remuneration</u>** (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—(A) **to refer an individual to a person for the furnishing or arranging for the furnishing of <u>any item or service for which payment may be made</u> in whole or in part <u>under a Federal health care program</u>**, or (B) to **purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering <u>any good, facility, service, or item for which payment may be made</u> in whole or in part <u>under a Federal health care program</u>**, shall be guilty of a felony upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320(a)–7(b)(2). (Emphasis added).

Viewed in its condensed, more easily understandable verbiage, the statute reads as follows:

>(2)(A) whoever…offers or pays any remuneration…to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of <u>any item or service for which payment may be made…under a Federal health care program</u>, shall be guilty of a felony….
>
>(2)(B) whoever…offers or pays any remuneration…to any person to induce such person to…order…or recommend…ordering <u>any good, facility, service, or item for which payment may be made under a Federal health care program</u>, shall be guilty of a felony…

<u>Id.</u> (Emphasis added).

In the case at bar, Defendant is charged with anti-kickback act related offenses in Counts 1 through 7 of the superseding indictment. These charges stem from two telemedicine companies owned by Defendant at different times, Affordadoc and Video Doc, wherein Defendant provided a specific and limited service.

Defendant's telemedicine companies essentially gave access to two vital services that occurred on its proprietary online platform: (1) it provided intake support for doctors who were approved physicians of the telemedicine company by gathering pedigree and medical information from the patient who called in (this process was recorded); and (2) it connected the patient and doctor for a private medical consultation (this process was not recorded based upon HIPPA concerns).

None of the services Defendant's telemedicine companies provided were "service[s] for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320(a)–7(b)(2).  In other words, Defendant did

not bill the patient nor Medicaid or Medicare for any of the services he provided. Defendant billed the telemarketing company that was the source of the patient. The process worked this way:

A telemarketer such as Herb Kimble (an informant in the case) would send out thousands of marketing materials on behalf of various medical service or Durable Medical Equipment Companies (hereinafter DME's). The marketing materials would advertise products and services targeting patients with previous or current medical needs for the advertised product or service. The materials would also have a call-in number. That call-in number would be directed to a call center contracted by the marketeer. When the patient called in to inquire about the advertised product, the call center would direct the patient to the proper parties, depending on the patient's needs.

For example, if the patient needed a consultation with a doctor, the marketeer's call center would redirect the patient to Defendant's telemedicine company. The relationship between the marketeer and Defendant's telemedicine company was as follows:

Once a marketeer's patient is directed to Defendant's telemedicine company, Defendant would use the proprietary telemedicine platform to connect the patient to one of its approved doctors that is located in the patient's resident state for a consultation. The telemarketer would pay Defendant between $75 and $79 for each

consultation that occurred. In other words, regardless of how many patients Defendant's company interviewed and regardless of how many patients were rejected or not determined to meet medical necessity requirements, Defendant would only get paid if the doctor provided a consultation.

The reason the fee was based upon consultation (and nothing else) is because the doctor's consultation was a direct out-of-pocket expense for Defendant's telemedicine company. Defendant's telemedicine company paid the doctors up to $40 per consultation. Simply, none of Defendant's fees for the services rendered by his telemedicine companies were billed to Medicaid or Medicare.

The only time Medicaid or Medicare was billed was when the doctor determined that a patient met the medical necessity for a prescription. Once the consultation was completed, the doctor made a decision whether to provide a prescription to the patient based on the patient's medical necessity. The doctor was paid a consultation fee whether or not he wrote a prescription. Further, this was a purely professional medical decision made by the doctor that Defendant's telemedicine companies played no part in.

While that prescription usually went to the marketeer's advertised DME company, it was only because the patient chose for the prescription to go there. In other words, during the recorded intake process, the patient was routinely asked

what pharmacy or DME facility he or she would like the prescription to go.  The prescription would then be forwarded to the appropriate DME based upon the patient's choice. If the patient chose to send the prescription to the marketeer's DME, the doctor would get paid for the consultation.  If the patient chose to send the prescription elsewhere, unrelated to the marketeer's DME, the doctor was still paid for the consultation.  Likewise, if the doctor decided a prescription was medically necessary, the doctor would get paid for the consultation.  If the doctor decided that a prescription was not medically necessary, the doctor would still get paid for the consultation.

 Here, Defendant's telemedicine company charged a flat fee based upon no other criteria except whether a doctor performed a consultation.  This flat fee is the epicenter of the Government's case because it came from the marketeer, Herb Kimble.  Herb Kimble has agreed that the money he made, and out of which was paid to Defendant for telemedicine services, was derived from the violation of the anti-kickback statute.

 But at second glance, it becomes clear that the anti-kickback statute is not violated because Defendant's telemedicine company was paid by a third party with money derived from that violation.  The statute is explicit that in order for Defendant to be found guilty of violating the statute, the telemedicine "service" he provided must also be a "service for which payment may be made under a Federal

health care program." 42 U.S.C. § 1320(a)–7(b)(2).  As previously stated, the consultation fee paid to the doctor was an out-of-pocket expense of the telemedicine company and was, therefore, not a "service for which payment may be made under a Federal health care program." Id.  Accordingly, there was no violation of the anti-kickback statute. Id.

This brings us back to the prescriptions that the doctors wrote based upon medical necessity.  A majority of these prescriptions (if not all) were paid for by Medicaid or Medicare.  However, in order for Defendant to violate the anti-kickback statute based upon his telemedicine company's relationship with the doctors, the telemedicine company must have offered the doctors renumeration (payment) not for the consultation (which was not under a Federal health care program and billed to Medicaid or Medicare) but for the prescriptions that the doctors wrote (which was under a Federal health care program and billed to Medicaid or Medicare).

In other words, because the writing of the prescriptions constituted the "ordering [of] any good[s]…or item for which payment may be made in whole or in part under a Federal health care program," see 42 U.S.C. § 1320(a)–7(b)(2), Defendant's telemedicine company would have had to offer or pay renumeration to the doctors "directly or indirectly" specifically for the writing of prescriptions in order to violate the anti-kickback statute.

Therefore, because Defendant's telemedicine company did not provide any services billed to a federal health care program and because Defendant's telemedicine company did not offer or make payments to doctors for the writing of prescriptions, 42 U.S.C. § 1320(a)–7(b) is unconstitutional "as applied" to Defendant's conduct in as much as it encourages and allows the exercise of federal jurisdiction over acts which jurisdiction is factually lacking and it impermissibly criminalizes Defendant's Fifth and Fourteenth Amendment "right to follow a chosen profession free from unreasonable governmental interference." Piecknick v. Commonwealth, 36 F.3d 1250, 1259 (3d Cir. 1994) (quoting Greene v. McElroy, 360 U.S. 474, 492 (1959)). And, in as much as it also violated Defendant's First Amendment right to assemble with others in performance of providing synergy services to market and advertise its business services in pursuit of growth and success of his chosen profession. C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P., 505 F.3d 818 (8th Cir. 2007)("[S]peech that informs, is protected by the First Amendment.").

In cases involving an "as-applied" challenge to a criminal indictment, the Court must determine whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's specific conduct. Spence v. Washington, 418 U.S. 405, 414 (1974). Said another way, unlike a facial attack on a statute, an as-applied challenge "does not contend that a law is unconstitutional

as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." United States v. Marcavage, 609 F.3d 264, 273 (3d Cir.2010)(citation omitted).

Under 18 U.S.C. § 3231, the jurisdictional provision for federal crimes, federal courts have subject-matter jurisdiction over violations of 42 U.S.C. § 1320(a)–7(b). However, as shown above, Defendant's actions and those of his telemedicine company "did not establish federal crime of [42 U.S.C. § 1320(a)–7(b)]…and…would not justify convictions under federal statute where evidence of [an illegal kickback]…was lacking." Parr v. United States, 363 U.S. 370 (1960). See also United States v. Maze, 414 U.S. 395, 405 (1974)("If the Federal Government is to engage in combat against fraudulent schemes not covered by the statute, it must do so at the initiative of Congress and not of this Court.").

Here, the service provided by Defendant's telemedicine company of intaking patients and connecting those patients with doctors for the purpose of obtaining a consultation did not fall under the anti-kickback statute's prohibition. As a result, jurisdiction is lacking with respects to that statute and the government's use of the statute to criminalize Defendant's conduct, decimated his business and deprived Defendant of his First, Fifth and Fourteenth Amendment "right to follow a chosen profession free from unreasonable governmental interference." Piecknick v. Commonwealth, 36 F.3d 1250, 1259 (3d Cir. 1994).

The First Amendment provides that "Congress shall make no law... abridging the freedom of speech, or of the press...." see U.S. Const. amend. I, and "provides a measure of protection to expressive association." F. for Acad. & Institutional Rts. v. Rumsfeld, 390 F.3d 219, 257 (3d Cir. 2004), rev'd and remanded sub nom. Rumsfeld v. F. for Acad. & Institutional Rts., Inc., 547 U.S. 47 (2006). See also Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 438 (3d Cir.2000)("[T]he Supreme Court has required a close relationship between the [government] action and the affected expressive activity to find a constitutional violation.").

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." see U.S. Const. amend. V, and "protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation." Id. (quoting Bernard v. United Twp. High Sch. Dist. No. 30, 5 F.3d 1090, 1092 (7th Cir. 1993)).

The Fourteenth Amendment similarly provides that no state shall "deprive any person of life, liberty, or property, without due process of law...." see U.S. Const. amend. XIV, and protects "'the liberty to pursue a calling or occupation… that is secured by the Fourteenth Amendment.'" Id. (quoting Bernard, 5 F.3d at 1092). Further, "[s]ubstantive due process is a 'component of the [Fourteenth Amendment] that protects individual liberty against certain government actions

regardless of the fairness of the procedures used to implement them.'" Wrench Transp. Sys., Inc. v. Bradley, 340 F. App'x 812, 815 (3d Cir. 2009) (internal quotations omitted) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)).

Here, the application of 42 U.S.C. § 1320(a)–7(b)(2) to Defendant and Defendant's business activities as described herein have violated Defendant's rights under the First, Fifth and Fourteenth Amendments, see id., "includ[ing] the right of an individual to reap the rewards of his or her endeavors," "an individual's right to earn a living," and "the desire to provide incentives to encourage a person's productive activities…" C.B.C. Distrib. & Mktg., Inc., 505 F.3d 818, 824 (8th Cir. 2007). See also, MLB Players Inc. v. DraftKings, Inc., ___ F.Supp.3d ___, No. CV 24-4884-KSM, 2025 WL 834201, at *24 (E.D. Pa. Mar. 17, 2025).

Indeed, the Government's use of the anti-kickback statute against Defendant in this case, totally destroyed his business and threatens to permanently deprive Defendant of the right to pursue his gift of providing completely legal but groundbreaking proprietary services in the telemedicine industry. See Six v. Newsom, 462 F. Supp. 3d 1060, 1072 (C.D. Cal. May 22, 2020)(holding that the right to earn a living "protects against 'a complete prohibition of the right to engage in a calling' and not against brief interruptions to that pursuit" (quoting Conn v. Gabbert, 526 U.S. 286, 292 (1999))).

For all the above reasons, this Court should find that jurisdiction over the 42 U.S.C. § 1320(a)–7(b) offense is lacking and that 42 U.S.C. § 1320(a)–7(b) is unconstitutional as applied to Defendant, his conduct and the conduct of his telemedicine companies.

II. **Counts 8 Through 11 Of The Superseding Indictment Must Be Dismissed In As Much As This Court As Well As The Federal Grand Jury Sitting In The District Of New Jersey That Returned The Superseding Indictment Lacked Jurisdiction To Return An Indictment As The Offenses Of Tax Evasion Alleged In The Indictment Occurred Exclusively In The Southern District Of Florida.**

Here, little comment is necessary. The tax evasion counts charged in the superseding indictment are based upon unfiled tax returns seized by the Government that was prepared by a CPA located in the Southern District of Florida. No acts related to the preparation of the unfiled tax returns occurred in the District of New Jersey. Further, while listing activities related to banking and nominee companies, none of those listed activities are tax evasion activities and none took place in the district of New Jersey.

Historically, Grand Juries have been constituted for the purpose of ascertaining whether or not crimes have been **committed in their district**. United States v. Neff, 212 F.2d 297, 302 (3d Cir. 1954). (Emphasis added). It has been long settled that while "courts may be required to be held at different places in a judicial district,…this does not affect the power of the grand jury sitting at either

place to present indictments for **offenses committed anywhere <u>within</u> the district**." <u>Barrett v. United States</u>, 169 U.S. 218, 221 (1898).

Indeed, a federal grand jury's jurisdiction over an offense is limited by statute. 18 U.S.C.A. § 3332(a)("It shall be the duty of each such grand jury impaneled within any judicial district **to inquire into offenses against the criminal laws of the United States alleged to have been committed <u>within</u> that district**."). (Emphasis added).

Further, it is "[w]ithout doubt, defendant is entitled to have his case tried 'by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law…'" <u>United States v. Hoover</u>, 139 F. Supp. 895, 896 (W.D. Pa. 1955), <u>aff'd</u>, 233 F.2d 870 (3d Cir. 1956)(quoting U.S. Const. Amend. VI).

As shown above, no acts constituting tax evasion occurred in the District of New Jersey. For the above reasons, Counts 8 through 11 should be dismissed.

## CONCLUSION

Accordingly, for all of the reasons stated above, it is respectfully requested that this Court dismiss Counts 1 through 7, find that federal jurisdiction is wanting in that Defendant's action do not implicate the anti-kickback statute or in the alternative that the anti-kickback statute is unconstitutional as applied to the conduct of Defendant and his telemedicine companies. This Court should also

dismiss the tax evasion offenses in Counts 8 through 11 of the indictment for lace of jurisdiction.

                                              Respectfully submitted,

                                              s/Isaac Wright, Jr., Esq.
                                              Attorney ID #015092008
                                              Hunt, Hamlin & Ridley
                                              60 Park Place, Suite #1600
                                              Newark, NJ 07102
                                              (973) 242-1144
                                              iwright@hunthamlinridley.com