**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Hon. Edward S. Kiel** |
| **v.** | : | **Crim. No. 19-246 (ESK)** |
| **CREAGHAN HARRY** | : | |

**UNITED STATES' OMNIBUS MOTION *IN LIMINE***

# TABLE OF CONTENTS

**I. INTRODUCTION ........ 6**

**II. STATUS OF THE CASE ........ 6**

**III. BACKGROUND ........ 7**

A. The Charges ........ 7

**IV. EVIDENTIARY ISSUES AND ARGUMENT ........ 8**

A. Preclude Evidence and Argument of Purported Good Conduct ........ 8

B. Preclude Defendant from Blaming Medicare for His Crimes ........ 9

C. Preclude Defendant from Arguing that Other Individuals Were Not Charged ........ 10

D. Preclude Defendant from Asserting Any Advice of Counsel Defense........**11**

E. Preclude Argument Regarding Supposed Failure to Call a Particular Witness ........ 14

F. Co-conspirator Statements ........ 15

G. Use of Defendant's Proffer-Protected Statements ........ 16

H. Preclude Jury Nullification ........ 17

I. Preclude Evidence and Argument Regarding the Volume, Nature, or Timing of Discovery or the Governmental Resources Allocated to Prosecuting This Case ........ 19

J. Preclude Reference to or Argument Regarding Anti-Kickback Statute Safe Harbors ........ 20

**K. Preclude Inquiry or Argument of Specific Possible Sentences for Cooperating Witnesses** ........22

L. Admit Summary Exhibits Under Rule 1006 ........ 23

M. Preclude Defense Use of Defendant's Statements ........ 24

N. Preclude Challenges to Authenticity and Chain of Custody ........ 26

O. Preclude Improper Use of Interview Reports to Impeach Witnesses ........ 26

**V. CONCLUSION ........ 28**

# TABLE OF AUTHORITIES

## Cases

*Bourjaily v. United States* 483 U.S. 171 (1987) ........ 15
*Herzog v. United States*, 226 F.2d 561 (9th Cir. 1955) ........ 9
*Lippay v. Christos*, 996 F.2d 1490 (3d Cir. 1993) ........ 26
*Morrison v. United States* 365 F.2d 521 (D.C. Cir. 1966) ........ 15
*Scarpa v. Dubois*, 38 F.3d 1 (1st Cir. 1994) ........ 18
*Shannon v. United States* 512 U.S. 573 (1994) ........ 19
*United States v. Adigun*, 998 F. Supp. 2d 356 (M.D. Pa. 2014) ........ 14
*United States v. Aiyaswamy*, No. 15-cr-568, 2017 WL 1365228 (N.D. Cal. Apr. 14, 2017) ........ 13
*United States v. Amico*, 486 F.3d 764 (2d Cir. 2007) ........ 10
*United States v. Bailey*, 444 U.S. 394 (1980) ........ 21
*United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973) ........ 10
*United States v. Bertoli*, 854 F. Supp. 975 (D.N.J. 1994) ........ 23, 24
*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ........ 13, 14
*United States v. Boone*, 458 F.3d 321 (3d Cir. 2006) ........ 18
*United States v. Bruce*, 109 F.3d 323 (7th Cir. 1997) ........ 17
*United States v. Burke*, No. 3:12-cr-318, 2015 WL 1931327 (N.D. Tex. Apr. 29, 2015) ........ 12
*United States v. Capozzi*, 723 F.3d 720 (6th Cir. 2013) ........ 21
*United States v. Coyle*, 63 F.3d 1239 (3d Cir. 1995) ........ 9, 10
*United States v. Crinel*, No. 15-cr-61, 2016 WL 5779778 (E.D. La. Oct. 3, 2016) ........ 13
*United States v. Crowder*, 325 F. Supp. 3d 131 (D.D.C. 2018) ........ 13, 14
*United States v. Dallmann*, 433 F. Supp. 3d 804 (E.D. Va. 2020) ........ 13
*United States v. DeMuro*, 677 F.3d 550 (3d Cir. 2012) ........ 17
*United States v. Duka*, 671 F.3d 329 (3d Cir. 2011) ........ 16
*United States v. Epstein*, 91 F. Supp. 3d 573 (D.N.J. 2015) (Wolfson, J.) ........ 18
*United States v. Fernandez*, 839 F.2d 639 (9th Cir. 1988) ........ 25
*United States v. Grimm*, 568 F.2d 1136 (5th Cir. 1978) ........ 9
*United States v. Hagen*, 542 F. Supp. 3d 515 (N.D. Tex. 2021) ........ 13
*United States v. Hardwick*, 544 F.3d 565 (3d Cir. 2008) ........ 16
*United States v. Holden*, No. 3:13-cr-444, 2015 WL 1514569 (D. Or. Mar. 19, 2015) ........ 13
*United States v. Jordan,* 316 F.3d 1215 (11th Cir. 2003) ........ 27
*United States v. Kapp*, 781 F.2d 1008 (3d Cir. 1986) ........ 25
*United States v. Larkin*, No. 2:12-cr-319, 2015 WL 4415506 (D. Nev. July 20, 2015) ........ 13
*United States v. Lopez*, 743 F. App'x 489 (3d Cir. 2018) ........ 16
*United States v. Marin*, 669 F.2d 73 (2d Cir. 1982) ........ 25
*United States v. McDaniel*, 398 F.3d 540 (6th Cir. 2005) ........ 24, 25
*United States v. Miles*, 360 F.3d 472 (5th Cir. 2004) ........ 20
*United States v. Miller*, 68 F.3d 465 (5th Cir. Aug. 23, 1995) ........ 27

*United States v. Myerson*, 18 F.3d 153 (2d Cir. 1994) .......... 15
*United States v. Napout*, No. 15-cr-252, 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017) .......... 13
*United States v. Neufeld*, 149 F.3d 1185, WL 320985 (6th Cir. 1998).......... 20
*United States v. Noel*, 905 F.3d 258 (3d Cir. 2018).......... 22
*United States v. Palow*, 777 F.2d 52 (1st Cir. 1985) .......... 25
*United States v. Perez*, 86 F.3d 735 (7th Cir. 1996) .......... 18
*United States v. Perla*, No. CR 20-281, 2022 WL 1300335 (W.D. Pa. Apr. 29, 2022) .......... 22
*United States v. Pierce*, 893 F.2d 669 (5th Cir. 1990).......... 27
*United States v. Prevatte*, 16 F.3d 767 (7th Cir. 1994).......... 25
*United States v. Raisley*, 466 F. App'x 125 (3d Cir. 2012) .......... 16, 17
*United States v. Raphael*, 487 Fed. Appx. 490 (11th Cir. 2012) .......... 14
*United States v. Ridner*, 512 F.3d 846 (6th Cir. 2008.......... 21
*United States v. Rios*, 636 F.3d 168 (5th Cir. 2011) .......... 14
*United States v. Saint Michael's Credit Union*, 880 F.2d 579 (1st Cir. 1989) .......... 15
*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990).......... 9
*United States v. Sepulveda*, 15 F.3d 1161 (1st Cir. 1993) .......... 18
*United States v. Shulick*, 18 F.4th 91 (3d Cir. 2021) .......... 9
*United States v. Siddiqui*, 235 F.3d 1318 (11th Cir. 2000),.......... 24
*United States v. Stimler*, 864 F.3d 253 (3d Cir. 2017).......... 18
*United States v. Tapplin*, 541 F. App'x 680 (6th Cir. 2013).......... 21
*United States v. Thomas*, 377 F.3d 232 (2d Cir. 2004).......... 10
*United States v. Thompson*, No. 99-41007, 2001 WL 498430 (5th Cir. Apr. 9, 2001) .......... 19
*United States v. Trump*, No. 23-cr-257, 2023 WL 7384233 (D.D.C. Nov. 8, 2023).......... 14
*United States v. Vastola*, 899 F.2d 211 (3d Cir. 1990) .......... 14
*United States v. Willis*, 759 F.2d 1486 (11th Cir. 1985).......... 25
*United States v. Wilson*, 322 F.3d 353 (5th Cir. 2003) .......... 14
*United States v. Woosley*, 761 F.2d 445 (8th Cir. 1985).......... 25
*Wayte v. United States*, 470 U.S. 598 (1985).......... 10

**Statutes**

18 U.S.C. § 3500(e)(1).......... 27
18 U.S.C. § 3500(e)(2).......... 27
42 U.S.C. § 1320a-7b.......... 20

**Rules**

Fed. R. Crim. P. 16. .......... 11, 12, 13, 14
Fed. R. Evid. 401 .......... 11, 18, 19, 22
Fed. R. Evid. 402 .......... 19
Fed. R. Evid. 403 .......... 8, 9, 11, 19, 22
Fed. R. Evid. 405(a).......... 8, 9

Fed. R. Evid. 405(b) .......... 8
Fed. R. Evid. 801(c) .......... 24
Fed. R. Evid. 801(d) .......... 15, 24, 25
Fed. R. Evid. 1006 .......... 23, 24

**Treatises**

2 McCormick on Evid. § 241 (8th ed. 2020) .......... 24

## I. INTRODUCTION

The United States files this motion to seek certain *in limine* rulings in advance of the trial of Defendant Creaghan Harry ("Defendant"). As explained below, Defendant owned and operated various businesses that paid medical providers illegal kickbacks to prescribe expensive braces and other products without examining the individuals to whom they were prescribed. Defendant then sold those orders in exchange for kickbacks and bribes to brace suppliers who billed Medicare regardless of medical necessity. Over the course of approximately four years, Defendant and his co-conspirators billed over $784 million in fraudulent claims to Medicare. This motion seeks to address the key evidentiary issues that may arise at Defendant's trial, including the use of Defendant's proffer-protected statements and Defendant's ability to raise a heretofore unnoticed advice-of-counsel defense.

## II. STATUS OF THE CASE

Trial will begin with jury selection on Monday, November 2, 2026. ECF No. 448. The estimated time necessary for the trial is 15 days after the completion of jury selection. The Defendant is not in custody. An interpreter will not be required. The Government expects to call approximately 25 witnesses.

## III. BACKGROUND

### A. The Charges

Defendant was indicted on April 5, 2019 (along with Lester Stockett and Elliot Loewenstern) on one count of conspiracy to defraud the United States and to pay and receive health care kickbacks, four counts of receiving kickbacks, and one count of conspiracy to commit money laundering. ECF No. 1. The Indictment is 16 pages and detailed. Stockett and Loewenstern both pleaded guilty. ECF No. 53 and 56.

The Indictment alleges that from 2015 through April 2019, Defendant Harry, through his control of telemedicine companies, solicited illegal kickbacks and bribes from brace suppliers (or marketers acting on their behalf) in exchange for the ordering and referral of doctors' orders. ECF No. 1 at ¶¶ 1(g) & 9(a)–(e). It further alleges that Defendant violated the AKS when he, among other things, "solicited and received illegal kickbacks and bribes from Person A and others in exchange for the ordering, arranging for, and recommending the ordering of braces for Medicare beneficiaries." *Id.* at ¶ 9(c). The Indictment further alleges that Defendant "facilitated ordering of braces by refraining from charging a fee to Medicare beneficiaries or billing Medicare for purported telemedicine consultations conducted by the Video Doctor Network health care providers." *Id.* at ¶ 9(e). Defendant falsely represented to lawyers, investors, and others that he operated bona fide telemedicine companies that did not receive these illegal kickbacks and instead made money from subscription fees paid by patients. *Id.* at ¶ 9(h). Defendant concealed that the companies received little in subscription fees and that the vast majority of revenue was from kickbacks. *Id.* at ¶ 9(h). To conceal the illegal kickback arrangement, Defendant routed payments from marketers and brace companies to nominee companies including a shell company in the Dominican Republic. *Id.* at ¶ 9(i).

On August 10, 2021, the grand jury charged Defendant in a Superseding Indictment. *See* ECF No. 197. The Superseding Indictment charged Defendant with the same crimes as the original Indictment and added one count of conspiracy to commit health care and wire fraud and four counts of tax evasion, with each tax evasion count carrying a statutory maximum of five years in prison. *Id*. at 18. In addition, the Superseding Indictment charged that the loss associated with the two fraud conspiracies was a billed loss of approximately $784 million an actual, paid loss of approximately $247 million. *Id.* at 12.

The four counts of tax evasion, Counts Eight through Eleven, allege that for tax years 2015 through 2018, "in the District of New Jersey and elsewhere," Defendant evaded his duty to pay income tax through, among other things, "[p]aying personal expenses using bank accounts in the name of NPC Consulting, LLC". *Id*. at 18.

## IV. EVIDENTIARY ISSUES AND ARGUMENT

### A. Preclude Evidence and Argument of Purported Good Conduct

Defendant may seek to present evidence of specific instances of purported good acts as circumstantial proof that he did not commit the charged offenses. But Defendant should be precluded from arguing, eliciting on direct or cross-examination, or offering any evidence at trial of specific acts of good conduct—including evidence of the provision of legitimate medical services by Defendant, or evidence that some patients liked the braces or creams they received. Such evidence is inadmissible because it is irrelevant to the charges alleged in the Superseding Indictment and potentially confusing to the jury, violative of Federal Rule of Evidence 403, and constitutes improper character evidence under Federal Rule of Evidence 405(b).

The Government moves to exclude all evidence of Defendant's lawfulness or non-corrupt conduct unrelated to the charges in this case, except reputation or opinion evidence offered by

character witnesses in conformity with the limitations of Federal Rule of Evidence 405(a). Other than testimony from character witnesses fitting within the narrow confines of Rule 405(a), no such evidence is admissible. "A defendant may not seek to establish [her] innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (excluding taped proof that defendants met regularly and did not discuss criminal activity). Evidence of other lawful behavior is irrelevant because acts of honesty do not prove an absence of dishonest acts. *See United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) (upholding exclusion of evidence that used car dealer paid for some cars instead of stealing them); *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955) ("A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions.").

Moreover, evidence of Defendant's other good acts could be confusing to the jury as they are irrelevant to the charged crimes and thus should be excluded under Rule 403. The fact that Defendant on occasion or in one context provided medically necessary braces does not make it more or less likely that his conduct in this case was not fraudulent. It may also confuse the jury into believing that these other acts somehow disprove a fact that is in contention. This evidence and argument should be prohibited.

**B. Preclude Defendant from Blaming Medicare for His Crimes**

Defendant should be prohibited from arguing that Medicare was negligent in failing to prevent or discover Defendant's fraud and false statements. The Government anticipates that Defendant will elicit evidence that Medicare did not revoke Video Doctor Network doctors' billing privileges despite evidence that Defendant and companies he controlled were prescribing braces to beneficiaries despite lacking a provider-patient relationship with them.

"'The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct.'" *United States v. Shulick*, 18 F.4th 91, 103 (3d Cir. 2021) (quoting *United*

*States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995)). Courts in this Circuit and around the country have held that a defendant may not offer evidence of a health insurers' negligence in handling claims to defend against allegations of fraud. *See United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) (observing that "a victim's lack of sophistication is not relevant to the intent element of mail or wire fraud") (collecting cases); *United States v. Thomas*, 377 F.3d 232, 242–44 (2d Cir. 2004) (collecting cases). Therefore, any argument or evidence about the supposed negligence of Medicare in preventing or discovering Defendant's fraudulent or false statements supporting claims to Medicare should be barred.

### C. Preclude Defendant from Arguing that Other Individuals Were Not Charged

Defendant should be barred from presenting evidence and arguments regarding the Government's decision not to charge other individuals involved in Defendant's health care fraud and wire fraud conspiracy. For instance, Defendant and his co-conspirators recruited a number of doctors to participate in the conspiracy, some of whom have not been charged with crimes.

The Government's charging determinations are unsuitable for review by a jury. "[T]he Government retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quotation omitted). Further, "the decision to prosecute is particularly ill-suited" to external review because "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.*; *see United States v. Berrigan*, 482 F.2d 171, 180 (3d Cir. 1973) ("[F]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made. . . .") (quotation omitted). Thus, that another person—for instance, a doctor who

signed brace orders for Defendant—was not charged with a crime does not demonstrate that Defendant did not commit the crimes with which he is charged.

Because the Government's charging decisions with respect to third parties are irrelevant, evidence regarding those decisions is inadmissible under Rules 401 and 403 and argument on these matters should be precluded.

**D. Preclude Defendant from Asserting Any Advice of Counsel Defense**

To date, the Government has not received any discovery from the Defendant, despite his obligations to produce discovery under Federal Rule of Criminal Procedure 16. Defendant provided a legal opinion letter to some of his co-conspirators during the course of the charged conspiracy. His defense attorneys have also indicated that he has communicated with attorneys prior to engaging in the conduct at issue in this case. For instance, during the May 30, 2019, hearing considering Defendant's motion for release from pretrial detention, Defendant's prior attorney stated that there "are defenses to the allegations" because Harry spent "hundreds of thousands of dollars engaging [attorneys] . . . ." Tr. 5/30/2019, at 29:24 – 30:1. The Government wrote to Defendant's counsel on September 6, 2019 to provide the Government's legal position regarding Defendant's obligation to provide notice of advice of counsel defenses, and asked Defendant to provide notice of any such defense by October 3, 2019. The Defendant's prior counsel responded to these requests on October 3, 2019, noting that "I anticipate that the advice of lawyers will be relevant in this case, we have not yet seen evidence sufficient for us to make a decision on whether the advice-of-counsel defense is appropriate." The Government has requested an update regarding Defendant's decision whether to assert an advice of counsel defense throughout this litigation, and received no answer or discovery of any defense. In the Court's most recent trial scheduling order (ECF No. 454 at 3, ¶ 7), the Court also ordered Defendant to provide notice of any advice of

counsel defense by 90 days prior to trial, but as of today—approximately 60 days from trial—Defendant has not provided notice.

The Government respectfully requests that the Court preclude Defendant from asserting any defense based on advice of counsel and exclude evidence and related materials regarding such advice. Because Defendant has failed to provide notice of the defense, waive privilege, and disclose any potentially privileged materials, he should be precluded from the use of undisclosed materials related to the defense at trial. For instance, he should be precluded from cross-examining Government witnesses with materials he has not disclosed in discovery or presenting the same through defense witnesses.

Rule 16 of the Federal Rules of Criminal Procedure impose discovery obligations on defendants. Specifically, Rule 16(b)(1)(A) provides that where the government complies with a defendant's request for disclosure under Rule 16(a)(1)(E), a defendant "must permit" the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs and tangible objects in a defendant's possession, custody, or control that the defendant "intends to use in [its] case-in-chief at trial." Fed. R. Cr. P. Rule 16(a)(1)(E). The rules do not allow a defendant to withhold discovery until the eve of trial or to set its own timetable. *See United States v. Burke*, No. 3:12-cr-318, 2015 WL 1931327, at *3 (N.D. Tex. Apr. 29, 2015) (rejecting the defense's contention that their discovery obligations had not yet been triggered due to the government's continued pretrial disclosures of discovery materials, as contrary to the spirit and intent of Rule 16) (internal citations omitted).

Rule 16(b)(1)(A) applies to all items that the defense will use to support its case, not merely those items that the defense will introduce after the government rests. Although Rule 16(b)(1) does not require a defendant to disclose evidence he intends to use only for purposes of impeachment,

Rule 16(b)(1)(A) applies to evidence that a defendant intends to present during the examination of the government's witnesses to support his defense, as well as to evidence that the defendant intends to present at trial after the government rests its case. *See*, *e.g.*, *United States v. Napout*, No. 15-cr-252, 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) ("Rule 16 requires defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant. . . . [W]here a defendant cross-examines a government witness to buttress [his] theory of the case, rather than to impeach the testimony given by the witness on direct examination, [t]he cross-examination . . . is properly seen as part of the defendant's case-in-chief. . . . [T]his interpretation of Rule 16 has been adopted by almost every district court to consider the issue.") (internal citations and quotation marks omitted); *accord United States v. Aiyaswamy*, No. 15-cr-568, 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017); *United States v. Crinel*, No. 15-cr-61, 2016 WL 5779778, at *3 (E.D. La. Oct. 3, 2016); *United States v. Larkin*, No. 2:12-cr-319, 2015 WL 4415506, at *5–6 (D. Nev. July 20, 2015); *United States v. Holden*, No. 3:13-cr-444, 2015 WL 1514569, at *3 (D. Or. Mar. 19, 2015).

"Courts have discretion to order pretrial notice of an advice-of-counsel defense because such [a] defense waives attorney-client privilege and warrants disclosing previously privileged documents to the Government." *United States v. Hagen*, 542 F. Supp. 3d 515, 518 (N.D. Tex. 2021); *see also United States v. Dallmann*, 433 F. Supp. 3d 804, 812–13 (E.D. Va. 2020); *United States v. Crowder*, 325 F. Supp. 3d 131, 137–38 (D.D.C. 2018).

It is axiomatic that the attorney-client privilege "cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). The assertion of an advice of counsel defense entitles the United States to review and inspect the advice upon which a

defendant relied, including all privileged communications concerning the same subject matter. *See id.* at 1292–94; *Crowder*, 325 F. Supp. 3d at 137–38. The government is entitled to production of the information supporting the defense at the time of notice, because "notice without disclosure would have little practical value, and would inject undue delay into the parties' pretrial preparations." *United States v. Trump*, No. 23-cr-257, 2023 WL 7384233, at *1 (D.D.C. Nov. 8, 2023).

As such, Defendant should be precluded from asserting an advice of counsel defense, either through cross-examination or his own witnesses, of which he has refused to provide notice.

### E. Preclude Argument Regarding Supposed Failure to Call a Particular Witness

Defendant should be precluded from commenting on or asking the jury to draw any negative inference from the Government's decision not to call a particular witness. The Government's discovery in this case includes reports of numerous interviews of individuals involved in the alleged crimes. The Government will likely not call all witnesses who could testify as to this matter. A jury is only permitted to infer that a witness's testimony would be favorable to the defense if the government does not produce the witness and he is exclusively available to the government. *United States v. Adigun*, 998 F. Supp. 2d 356, 366–68 (M.D. Pa. 2014), *aff'd*, 609 F. App'x 718 (3d Cir. 2015). This inference "is not appropriate when the witness is available to both the defense and the prosecution." *United States v. Vastola*, 899 F.2d 211, 235 (3d Cir. 1990), *vacated on other grounds by* 497 U.S. 1001 (1990); *see also United States v. Wilson*, 322 F.3d 353, 363 n.14 (5th Cir. 2003). That the government has not immunized from prosecution a particular witness who is likely to invoke his Fifth Amendment right against self-incrimination does not make the person unavailable to the defense. *See United States v. Raphael*, 487 Fed. Appx. 490, 500 (11th Cir. 2012); *United States v. Rios*, 636 F.3d 168, 171–72 (5th Cir. 2011); *United*

*States v. Myerson*, 18 F.3d 153, 157–60 (2d Cir. 1994); *United States v. Saint Michael's Credit Union*, 880 F.2d 579, 597–98 (1st Cir. 1989); *Morrison v. United States*, 365 F.2d 521, 524 (D.C. Cir. 1966).

In this case, Defendant may subpoena any witness available to the Government, and, as such, it is impermissible for him to make arguments about what a particular witness not called by the Government might say under oath.

**F. Co-conspirator Statements**

As discussed above, the conspiracies in this case involved numerous individuals working together to achieve a common illegal purpose. Several Government witnesses will testify to or about statements of co-conspirators, and this evidence is admissible, as explained below. To avoid trial disruption and jury confusion, an outline of the law in this area is provided in advance to assist the Court should any hearsay objections arise related to co-conspirator statements.

As a general matter, a statement is not hearsay if it is made by a co-conspirator in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E). Specifically, Rule 801(d)(2)(E) provides that "a statement is not hearsay if . . . [t]he statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy." In *Bourjaily v. United States*, the Supreme Court examined the history of the co-conspirator exception to the hearsay rule and found it to be firmly rooted. 483 U.S. 171, 183 (1987). The Court made clear, however, that such statements must have been "made in the course and in furtherance of the conspiracy" to qualify as statements falling within a firmly rooted hearsay exception for Confrontation Clause purposes. *Id.* The Court also established that the standard of proof for these requirements was a "preponderance of evidence." *Id.* Under Third Circuit precedent, in order to admit a statement under Rule 801(d)(2)(E), "(1) there must be independent evidence establishing the existence of the conspiracy and connecting the declarant and defendant to it; (2) the statement

must have been made in furtherance of the conspiracy; and (3) it must have been made during the course of the conspiracy." *United States v. Lopez*, 743 F. App'x 489, 492 (3d Cir. 2018) (citation omitted). "The threshold for establishing that a statement was made in furtherance of a conspiracy is not high: [t]he in furtherance requirement is usually given a broad interpretation." *United States v. Duka*, 671 F.3d 329, 348 (3d Cir. 2011) (citation and internal quotation marks omitted).

Thus, the Court should deny any objection to properly admissible co-conspirator statements.

**G. Use of Defendant's Proffer-Protected Statements**

During plea negotiations, Defendant entered into a proffer agreement with the Government and made a potentially inculpatory statement under that agreement. Specifically, the Defendant noted that one of his co-conspirators had raped multiple women in New Jersey and that Defendant had to testify about it for his co-conspirator. Should Defendant deny knowing this co-conspirator or the strength of his relationship with this co-conspirator, Defendant may open the door to the use of those statements during trial. To avoid trial disruption, an outline of the law in this area is provided in advance to assist the Court should the Government seek offer Defendant's proffers to cross-examine Defendant or rebut statements or arguments made by Defendant or his counsel.

Proffer agreements are contracts, and their "terms must be read to give effect to the parties' intent." *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008). Determining whether a defendant has triggered the waiver provisions of a proffer agreement "requires an analysis of the terms of the waiver." *Id.* If the terms of the waiver are broad, a defendant's counsel can open the door to the admission of statements made during a proffer by asserting contradictory arguments in an opening statement. *See United States v. Raisley*, 466 F. App'x 125, 130 (3d Cir. 2012) ("Because of the clear contradiction between Raisley's proffer statement and his [counsel's] opening statement at trial, the District Court did not abuse its discretion by admitting Raisley's

proffer statement."). It is no abuse of discretion to enforce a broad waiver provision simply because a defendant may be unable to "assert any defense at trial without opening the door to the proffer session." *Id.* Under such circumstances, a defendant may argue that the "facts put in evidence by the prosecution are insufficient to permit the jury to find the elements of the crime proved" and avoid triggering the waiver provision. *Id.* (citation and internal quotation marks omitted).

Here, the parties entered into a proffer agreement, and Defendant proffered two times under that agreement. The proffer agreement provides that "[t]he government may use [Defendant's] statements and any information provided by [the Defendant] to cross-examine him and to rebut any evidence or arguments offered on his behalf." Identical waiver provisions have been described as "expansive" by the Third Circuit" and "allow[ing] the use of proffer statements 'to rebut *any* evidence or arguments" offered on a defendant's behalf." *Raisley*, 466 F. App'x at 130 (emphasis in original). If Defendant or his counsel contradict the statements Defendant made in either of his two proffers with the Government, the Government intends to use Defendant's statements from the proffer sessions to cross-examine Defendant or rebut those claims, and the Court should admit those statements both for impeachment purposes and as substantive evidence.

### H. Preclude Jury Nullification

Defendant should be precluded from arguing or otherwise presenting evidence or pursuing lines of inquiry about the Government's charging decisions with respect to Defendant, which would amount to a request for jury nullification.

It is well established that jury nullification—asking the jury to decide a case on extraneous matters—is "an aberration under our system." *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) (quotation omitted); *see also United States v. DeMuro*, 677 F.3d 550, 565 (3d Cir. 2012) (holding that district court properly excluded evidence that would have invited jury nullification).

Because "jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role," *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006), any appeal to jury nullification is effectively "invit[ing] the jury to act lawlessly," *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996).

Moreover, evidence and argument directed toward jury nullification have no tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence and is therefore irrelevant under Federal Rule of Evidence 401. Thus, when the only purpose of evidence or argument is to encourage jury nullification, it should be excluded. *See United States v. Stimler*, 864 F.3d 253, 269 (3d Cir. 2017) (evidence or argument that "give[s] rise to the potential for jury nullification" is "substantially prejudicial" and should be excluded); *Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("A trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *see also United States v. Epstein*, 91 F. Supp. 3d 573, 597 (D.N.J. 2015) (Wolfson, J.) (excluding evidence of religious consent because its introduction "would open the door to jury nullification").

The Government further moves to exclude evidence and to preclude arguments that encourage the jury to acquit based on anything other than the evidence and the law, including Defendant's potential sentence or the impact of a conviction on Defendant's life, any exclusions from participating in the Medicare program that may result from Defendant's conviction, Defendant's potential term of imprisonment if convicted, and the impact of a conviction on Defendant's future earning capacity. Because the jury will play no part in Defendant's sentencing, the mention of the potential sentence is irrelevant and would serve only to invite jury nullification.

*See*, *e.g.*, *Shannon v. United States*, 512 U.S. 573, 579 (1994); *United States v. Thompson*, No. 99-41007, 2001 WL 498430, at *16 (5th Cir. Apr. 9, 2001). Relatedly, any suggestion that a guilty verdict would have a negative impact on Defendant's life or livelihood invites the jury to consider the potential consequences of a conviction and also creates an impermissible risk of jury nullification.

### I. Preclude Evidence and Argument Regarding the Volume, Nature, or Timing of Discovery or the Governmental Resources Allocated to Prosecuting This Case

Defendant should be precluded from arguing or eliciting testimony regarding the volume, nature, or timing of discovery or the volume and type of federal resources used in the investigation and prosecution of the case. Any attempt by Defendant to comment on discovery or the allocation of federal resources is irrelevant and unduly prejudicial. Fed. R. Evid. 401–403. Such argument or testimony creates an undue risk that the jury will be diverted from its duty to decide the case on the evidence and to apply the law. Instead, such arguments and testimony invite the jury to improperly consider irrelevant information about discovery disputes and the government's decision making about how to allocate resources.

### J. Preclude Reference to or Argument Regarding Anti-Kickback Statute Safe Harbors

Under the Anti-Kickback Statute, anyone who "knowingly and willfully solicits or receives any remuneration (including any kickback . . . ) directly or indirectly . . . for referring an individual to a person for the furnishing . . . of any item or service for which payment may be made in whole or in part under a Federal health care program," such as Medicare—as well as anyone who "offers or pays such remuneration"—is subject to criminal penalties. 42 U.S.C. § 1320a-7b; *see also United States v. Neufeld*, 149 F.3d 1185, 1998 WL 320985 (6th Cir. 1998) (unpublished table decision) ("The statute prohibits health-care providers from receiving or offering 'any remuneration . . . for referring' patients to health-care services for which Medicare . . . pays."). The statute therefore "criminalizes the payment of any funds or benefits designed to encourage an individual to refer another party to a Medicare provider for services to be paid for by the Medicare program." *United States v. Miles*, 360 F.3d 472, 479 (5th Cir. 2004).

The Anti-Kickback Statute contains certain safe harbors and authorizes the Secretary of Health and Human Services to promulgate additional safe harbors. *See* 42 U.S.C. § 1320a-7b(b)(3). Courts have consistently held that the Anti-Kickback Statute safe harbors are "affirmative defense[s] which the defendant must prove."[1]

---

[1] *United States v. Valentino*, No. 20-cr-309, 2023 WL 361077, at *14 (E.D. Pa. Jan. 23, 2023) (holding defendant required to prove by preponderance personal services safe harbor because it is an affirmative defense); *see also United States v. Ekwebelem*, 669 F. App'x 868, 868 (9th Cir. 2016) ("The trial court did not err in holding that the 'bona fide employment relationship' safe harbor . . . is an affirmative defense. . . . A contrary holding would lead to absurd indictments requiring the government to plead the negative of every enumerated safe harbor . . . .") (unpublished); *United States v. Turner*, 561 F. App'x 312, 319–320 (5th Cir. 2014) (holding district court did not err in failing to instruct jury on bona fide employee safe harbor); *United States v. Norton*, 17 F. App'x 98, 102 (4th Cir. 2001) (holding, with respect to safe harbors, because the defendant "failed to present sufficient evidence of this affirmative defense, the district court did not have to instruct the jury on that defense"); *United States v. George*, 171 F. Supp. 3d 810, 818 (N.D. Ill. 2016) ("Safe-harbor provisions are an affirmative defense that must be proven by the Defendant.").

"In order for a defendant to be entitled to present a defense to the jury, 'it is essential that the testimony given or proffered meet a minimum standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense.'" *United States v. Capozzi*, 723 F.3d 720, 725 (6th Cir. 2013) (quoting *United States v. Bailey*, 444 U.S. 394, 415 (1980)). A defense "must be supported by evidence, not merely based on suspicion or speculation." *United States v. Tapplin*, 541 F. App'x 680, 681 (6th Cir. 2013) (unpublished) (internal quotation marks and citation omitted).

Therefore, "a trial judge has a duty to require a *prima facie* showing by the defendant that he can produce evidence on each of the elements of the defense." *Capozzi*, 723 F.3d at 725 (internal quotation marks and citation omitted). While "[t]he defendant's preliminary burden is not a heavy one and is met even where there is weak supporting evidence," the district court may properly exclude evidence if it is "insufficient as a matter of law to support" the defense. *Id.* at 725–26 (internal quotation marks and citations omitted) (affirming refusal to permit defendant to present duress defense). "When the issue arises in a pre-trial motion, as opposed to a court's refusal to give an accurate jury instruction, the rule is the same: the defendant must proffer evidence that is legally sufficient to support the defense." *United States v. Ridner*, 512 F.3d 846, 849 (6th Cir. 2008).

None of the payments that co-conspirators paid the Video Doctor Network fall within a safe harbor for advertising or any other legitimate activity. There is no safe harbor applicable to volume-based payments for orders or prescriptions of products paid for by Medicare. Therefore, the safe harbors are irrelevant and should not be discussed in opening and closing arguments, on cross-examination, or at any other point during trial. Moreover, the safe harbors are technical and nuanced legal concepts that will do nothing to help the jury understand the issues in this case. Quite the opposite, these irrelevant and inapplicable doctrines will only confuse and mislead the

jury and frustrate their understanding of the evidence of the conspiracy to pay and receive illegal health care kickbacks. Hence, the Court should exclude any argument or evidence about the safe harbors pursuant to Federal Rules of Evidence 401 and 403.

### K. Preclude Inquiry or Argument of Specific Possible Sentences for Cooperating Witnesses

Defendant should not be permitted to question cooperating witnesses regarding the potential Sentencing Guidelines range they may face as a result of a plea agreement. It is well established that Defendant may cross-examine cooperating witnesses about sources of potential bias. A cooperating witness may be cross-examined about their motivations for entering into the plea and the agreement itself, including that in exchange for pleading guilty, the government would not charge the witness with additional crimes. *United States v. Noel*, 905 F.3d 258, 268–70 (3d Cir. 2018). But that right is not unlimited. *See id.* at 269 (upholding district court's decision to limit inquiry into specific sentence lengths); *United States v. Perla*, No. CR 20-281, 2022 WL 1300335, at *3 (W.D. Pa. Apr. 29, 2022) (barring defendant from "elicit[ing] information about specific sentences associated with any charged offenses, such as the statutory minimum and/or maximum penalties or the advisory sentencing guidelines calculations"). Such inquiry invites

speculation about the possible sentence of Defendant and is unduly prejudicial and confusing and only invites unlawful jury nullification.

### L. Admit Summary Exhibits Under Rule 1006

The Court should admit the Government's planned summary charts into evidence pursuant to Federal Rule of Evidence 1006. To avoid trial disruption and jury confusion, an outline of the law in this area is provided in advance to assist the Court should any objection to the summary exhibits be made at trial.

Rule 1006 provides that "[t]he court may admit as evidence a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." With respect to the underlying records that support the summary exhibit, Rule 1006 provides that, "[t]he proponent must make the underlying originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court." Rule 1006 is "based on the common-law rule that a party may prove the contents of voluminous writings that cannot be examined in court without causing inconvenience and waste of time by presenting evidence of their contents in abbreviated form." 6-1006 Weinstein's Federal Evidence § 1006.02 (2017).

Summary charts are admissible at trial, pursuant to Rule 1006, to summarize voluminous documents, which need not have been previously admitted into evidence, because in-court review of those documents would be inconvenient or impracticable. *United States v. Bertoli*, 854 F. Supp. 975, 1049–50 (D.N.J. 1994), *aff'd in part*, *vacated in part*, 40 F.3d 1384 (3d Cir. 1994). Rule 1006 does not require "that it be literally impossible to examine all the underlying records [before a summary chart may be utilized], but only that in-court examination would be an inconvenience." *Id.* at 1050.

In addition to showing that the records are sufficiently voluminous or complex, the

proponent must demonstrate that the underlying records themselves are otherwise admissible under the Federal Rules of Evidence. 2 McCormick on Evid. § 241 (8th ed. 2020). As long as the underlying records are admissible, the proponent has the discretion to move the records into evidence or to simply rely on the summary exhibit. *Bertoli*, 854 F. Supp. at 1050 ("One of the most significant aspects of Rule 1006 is that there is no prerequisite that the underlying documents have been submitted into evidence."). Once the requisite foundation is provided, a Rule 1006 summary may be admitted into evidence and go to the jury just like any other admitted exhibit. 2 McCormick on Evid. § 241.

Each of the United States' planned summary exhibits summarize relevant, admissible evidence to prove the charges in the superseding indictment. These exhibits will summarize voluminous bank records, tax records, and claims data from health care benefit programs. The Government has provided defense with copies of its intended summary exhibits.

**M. Preclude Defense Use of Defendant's Statements**

The Government intends to present a variety of evidence as admissions of a party opponent under Federal Rule of Evidence 801(d)(2). Such evidence, when introduced by the Government against the opposing party, is, by definition, not hearsay. *See* Fed. R. Evid. 801(d). Thus, for example, documents written by a party may be admitted against the party who wrote them, *United States v. Siddiqui*, 235 F.3d 1318, 1323 (11th Cir. 2000), and confessions may be admitted against the party who gave them, *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

Such statements, however, may not be admitted by the party who made the statements because Rule 801(d)(2) does not allow a party "to introduce his or her *own* statements through the testimony of other witnesses." *Id.* (emphasis in original). The statements would be offered by a defendant for their truth, Fed. R. Evid. 801(c), and would impermissibly enable a defendant to introduce his self-serving statements through the government's witnesses without subjecting the

defendant to cross-examination. *United States v. Kapp*, 781 F.2d 1008, 1014 (3d Cir. 1986) (upholding district court's ruling that tape recording of a conversation between a co-defendant and a government informant that the defendant considered exculpatory on the issue of his knowledge of illegality was inadmissible because it was not offered "against a party" as required by Rule 801(d)(2)). Indeed, if such statements were admissible, "parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *McDaniel*, 398 F.3d at 545; *see also United States v. Palow*, 777 F.2d 52, 56 (1st Cir. 1985) ("The requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them."); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("[A] party's own statement, if offered against him, is not hearsay."); *see also United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988); *United States v. Woosley*, 761 F.2d 445, 449 (8th Cir. 1985); *United States v. Willis*, 759 F.2d 1486, 1501 (11th Cir. 1985).

In this case, emails and text messages containing written statements of Defendant will be introduced by the Government. This does not mean that Defendant will be able to do likewise. It does not matter whether the information Defendant seeks to admit is inculpatory or exculpatory. In either case, a party simply cannot admit his own statements as admissions of a party opponent. *McDaniel*, 398 F.3d at 545, n.2; *Kapp*, 781 F.2d at 1014.[2] Therefore, the Court should preclude Defendant from introducing his own out-of-court statements.

---

[2] Rule 801(d)(2) operates differently against the Government. Because agents of the Government are disinterested in the outcome of the trial, and are unable to bind the sovereign, courts have, at least in criminal cases excluded government employees' statements from the admissions of the party opponent rule. *United States v. Prevatte*, 16 F.3d 767, 779 n. 9 (7th Cir. 1994). Although *dicta*, the Third Circuit has recognized that several courts have held that statements by police officers or other law enforcement officials are not admissible as substantive

### N. Preclude Challenges to Authenticity and Chain of Custody

The Court should preclude Defendant from challenging the authenticity or chain of custody of the Government's pre-marked exhibits. This Court entered a trial scheduling order that set a deadline for the Defendant to contest the authenticity and chain of custody of exhibits. Specifically, the order provides that "[i]f the Defendant wishes to contest the authenticity or chain of custody of an exhibit, counsel for the Defendant shall file, no later than 14 days after receiving the exhibit, a notice that the authenticity and/or chain of custody of the exhibit will be contested at trial together with a statement delineating why the authenticity and/or chain of custody of the exhibit is being challenged and a certification that the challenge is being made in good faith." Dkt. No. 454 at 1–2, ¶ 1.b. On June 10, 2026, the Government provided Defendant with copies of the Government's pre-marked exhibits. As of the date of this motion, the Defendant has not indicated he wishes to contest the authenticity or chain of custody of any of the exhibits. Accordingly, the Court should not permit challenges to the Government's pre-marked exhibits on authenticity or chain-of-custody grounds at trial.

### O. Preclude Improper Use of Interview Reports to Impeach Witnesses

In discovery, the Government provided Defendant with memoranda written by law enforcement agents from interviews conducted during the investigation of this case. Defendant should not be permitted to impeach witnesses who did not author these reports without first approaching the bench to establish the impeachment value of the report. Interview summary reports are generally not witness statements under the Jencks Act as to the witness who was

---

evidence against the sovereign in a criminal prosecution. *Lippay v. Christos*, 996 F.2d 1490, 1497 (3d Cir. 1993).

interviewed. Therefore, Defendant should be precluded from using such reports to impeach a witness on cross examination, publishing such reports to the jury, or suggesting to the jury that such summaries are witness statements. *Cf. United States v. Jordan,* 316 F.3d 1215, 1252 (11th Cir. 2003) (observing "an interviewer's raw notes, and anything prepared from those notes (such as an FBI 302), are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"). Such a report would have no impeachment value unless it has been adopted by the witness or it reflects a substantially verbatim transcription. *See*, *e.g.*, *United States v. Miller*, 68 F.3d 465 at *10 (5th Cir. Aug. 23, 1995) ("[A]gent's interview notes are not 'statements' of the witness under § 3500(e) unless the witness 'signed or otherwise adopted or approved the report,' 18 U.S.C. § 3500(e)(1), or the notes were 'substantially verbatim reports' of the witness interview, 18 U.S.C. § 3500(e)(2)." (quoting *United States v. Pierce*, 893 F.2d 669, 675 (5th Cir. 1990) (alteration in original))).

## V. CONCLUSION

For the foregoing reasons, the Court should enter orders granting the Government's requests in this omnibus motion *in limine*.

Respectfully Submitted,

ROBERT FRAZER
United States Attorney
District of New Jersey

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division
U.S. Department of Justice

*/s/ Darren C. Halverson*

By: DARREN C. HALVERSON
Assistant Chief
NICHOLAS K. PEONE
Trial Attorney
Health Care Fraud Section
National Fraud Enforcement Division
U.S. Department of Justice