**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,
Plaintiff,
v.
CREAGHAN HARRY,
Defendant.

Hon. Edward S. Kiel, U.S.D.J.

Crim. No. 19-246 (ESK)

# GOVERNMENT'S OPPOSITION TO DEFENDANT'S OMNIBUS MOTION TO COMPEL DISCOVERY, REPLACE COUNSEL, AND ADJOURN TRIAL

The government respectfully submits this brief in opposition to the omnibus motion filed on behalf of defendant Creaghan Harry ("Defendant"), which is supported solely by the certification of Defendant's retained lead counsel, Isaac Wright, Jr. (ECF No. 477-1) ("Wright Cert."). Defendant's motion and certification ask the Court for three things: (1) an order compelling the government to produce Defendant's proffer statements without redaction; (2) appointment of new CJA counsel to take over the management of discovery, following the departure of previously appointed CJA counsel Michael Robertson, Esq.; and (3) an adjournment of the trial, currently scheduled for November 2, 2026—roughly two months from now—until new CJA counsel is appointed and "brought up to speed." (Wright Cert. ¶ 45.) The government respectfully submits that the Court should deny this motion.

Taken on its own terms, Mr. Wright's certification does not describe a discovery dispute that calls for more time. It describes a complete breakdown in the attorney-client relationship because Mr. Wright no longer trusts Defendant. Mr. Wright avers that Defendant and Mr. Robertson "knowingly and deliberately" kept him in the dark about a reverse proffer session and the proffer agreement Defendant ultimately signed. (Wright Cert. ¶¶ 33, 37.) He states that this has

"shaken [his] belief in Defendant as well as in his trustworthiness," which he describes as "the single most important aspect of the undersigned's ability to successfully defend the client." (*Id.* ¶ 41.) And he states that his representation "may be constitutionally prohibited," that the current conflict "cannot be waived," and his ability to defend Defendant is "mortally wounded." (*Id.* ¶¶ 16, 40, 43.) Those are the words of an attorney describing an irreconcilable breakdown in the attorney-client relationship, not the words of an attorney who needs a few more months to review documents. Mr. Wright's account provides grounds for the conflicted attorney and client to part ways in an orderly fashion and the case to proceed with new defense counsel. It is not a basis to adjourn a trial in a case that has already been pending for more than seven years.

The certification is equally clear that whatever went wrong did not occur because the current trial date is too close, and did not occur because the government withheld anything from Mr. Wright. Mr. Wright's own account shows that he elected not to attend the reverse proffer session himself (Wright Cert. ¶ 20), and that he was told nothing about a resulting plea offer until the government sent one directly purportedly "without warning or discussion" on March 2, 2026 — more than six months before this motion was filed (*id.* ¶ 25). Mr. Wright's certification suggests that the fact that Defendant had proffered was concealed from him until it surfaced later in 2026 "for the first time" in the procedural history of the government's filings. (*Id.* ¶ 32.) That is not accurate. The government referenced Defendant's "desire to cooperate in other matters" and "his proffer" in e-mails to Mr. Wright in March 2026. *See* Ex. 1, E-Mail dated March 2, 2026 ("This is the best offer that we're able to make with the evidence that we have and in light of Mr. Harry's desire to cooperate in other matters."); Ex. 2, E-Mail dated March 13, 2026 (noting that "[d]uring his proffer, Mr. Harry also noted that he continues to have issues accessing discovery through Cornerstone's platform"). Whatever the source of the current friction among Mr. Wright and

Defendant, it has been building for the better part of a year. It is not a product of the trial date or any government action, and a continuance will not resolve it.

Finally, Mr. Wright's suggestion that he requires additional time because he has not personally mastered more than six years of accumulated discovery (Wright Cert. ¶¶ 15, 45) is not good cause for a continuance under Third Circuit law. Mr. Wright made the decision to delegate discovery review to Mr. Robertson. (*Id.* ¶¶ 12–14.) Mr. Wright also made the decision—as inexplicable as it seems—to have "no involvement in the system Developed by Mr. Robertson . . . . " (*Id.* ¶ 15.) Mr. Robertson has since left the case. That development does not change the analysis. The review system and forensic-hosting infrastructure Mr. Robertson and the Cornerstone team spent three years building remains in existence and available to whoever is appointed to succeed him, and trial is not scheduled until November 2, 2026 — nearly two months from the filing of this opposition. That is ample time for Mr. Wright to review discovery or for a Court to appoint successor CJA counsel and for that attorney to be oriented to an existing, already-organized review system, rather than starting from nothing. A defendant is not entitled to a continuance merely because the particular attorney who built that system is no longer the one operating it. More still, the Government has provided Defendant with a gameplan of its case during the reverse proffer and has provided the Defendant with the exhibits the Government intends to introduce at trial. There is no reason this case cannot be tried in November after more than 7 years.

## ARGUMENT

### 1. Defendant's Certification Describes Grounds for the Substitution or Disqualification of Counsel, Not a Continuance of Trial

A motion to substitute or withdraw counsel is analyzed under a different standard than a motion for a continuance, and the two forms of relief should not be conflated. Third Circuit law defines "good cause" for the substitution of counsel as "a conflict of interest, a complete

breakdown of communication, or an irreconcilable conflict with the attorney." *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995) (citing *United States v. Welty*, 674 F.2d 185, 187–88 (3d Cir. 1982)). As explained in the Government's motion to disqualify counsel (Dkt. No. 467), an unwaivable conflict exists or, alternatively, a sufficiently serious potential for conflict exists that warrants disqualifying Mr. Wright. Although the Court denied the Government's motion based on the available record at the time (which did not include Mr. Wright's certification), Mr. Wright's certification provides an additional, alternative bases to disqualify him and compel the substitution of counsel: Mr. Wright represents that a complete breakdown of communication and irreconcilable conflict with Defendant has arisen. The appropriate remedy is substitution of counsel through the ordinary channels — not the wholesale rescheduling of a trial that in no way resolves the underlying conflict.

Mr. Wright's own statements satisfy whatever standard may apply. Mr. Wright states that Defendant and Mr. Robertson "cooperated with the Government . . . to keep the undersigned . . . isolated from one of the most significant and self-damning events a Defendant could undertake in a criminal case." (Wright Cert. ¶ 37.) Mr. Wright further states that this conduct has "shaken [his] belief in Defendant as well as in his trustworthiness," which he describes, in his own words, as "the single most important aspect of the undersigned's ability to successfully defend the client." (*Id*. ¶ 41.) And Mr. Wright states, without qualification, that "the current conflict" is one "that cannot be waived" and that, absent its elimination, his "ability to defend Defendant is mortally wounded" and his "belief in Defendant can never be repaired." (*Id*. ¶¶ 40, 43.) He states that he cannot know whether the conflict is "one that cannot be waived." (*Id*. ¶ 40.)

The government does not concede that Mr. Robertson or Defendant did anything improper by attending a reverse proffer session and choosing to proffer thereafter to provide investigative

leads to the Government. Indeed, this gave Mr. Robertson and the Defendant insight into the Government's anticipated evidence and trial strategy and led to an eventual plea offer from the Government. Mr. Wright attempts to concoct a discovery violation by falsely stating that Defendant's proffer sessions were concealed from him for months and that the reports of those proffer sessions were "completely redacted." (*Id.* ¶¶ 32, 34.) In fact, Mr. Wright learned of the proffers no later than March 2026, and the reports were not redacted to the extent they involved information potentially relevant to the defense. Rather, information related to potential criminal conduct of other individuals, unrelated to the charges in this case, was redacted. Mr. Wright has no right to information unrelated to this case, and his refusal to represent the Defendant without it does not make it discoverable.

Mr. Wright is asking the Court to treat as a discovery-management problem what he himself describes as a total, non-waivable breakdown in communication and the attorney-client relationship. That is not what a continuance is for. A continuance simply moves a fixed date on the calendar: it does nothing to restore confidence that Mr. Wright says has been irreparably lost, and Mr. Wright does not suggest otherwise anywhere in his certification. If the relationship between Defendant and Mr. Wright is beyond repair, as Mr. Wright represents, the only appropriate course is for the Court to address the composition of the defense team directly through the ordinary procedures governing substitution of counsel — not to allow Mr. Wright more time to prepare for a trial of a Defendant he does not trust and with whom he is not communicating. And if Mr. Wright is unwilling to voluntarily withdraw despite his acknowledgment of a conflict, then the appropriate remedy is for the Court to disqualify him.

Indeed, Mr. Wright's certification confirms that a continuance would not even address the harm he identifies. He states that he "does not request to be relieved of counsel" and instead seeks

the Court's "guidance and assistance in eliminating a conflict." (*Id.* ¶ 44.) But an adjournment does not eliminate a conflict that Mr. Wright himself described as not waivable and permanent; it merely postpones the moment at which the Court must resolve it. If, as Mr. Wright states, no set of facts can restore his or Defendant's trust in one another, the case should proceed on its current schedule while the Court addresses the composition of the defense team through the appropriate channel — not be delayed on the theory that more time will cure a breach that Mr. Wright himself describes as beyond repair.

### 2. Defendant Presents No Cause for a Continuance

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process . . . . " *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "Trial judges necessarily require a great deal of latitude in scheduling trials," and "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (internal quotation marks omitted).

#### ***A. The Two Months Remaining Before Trial Are Ample Time to Resolve Any Legitimate Counsel Issue Without Moving the Trial Date***

Courts in this Circuit have found far less lead time than the parties have here to be constitutionally sufficient for a transition of counsel. *See United States v. Sharif*, No. CR 23-630 (MAS), 2024 WL 3431475, at *1 (D.N.J. July 15, 2024) (denying a continuance sought on the morning jury selection was to begin). This motion was filed September 2, 2026, with trial not scheduled to begin until November 2, 2026. That interval is more than sufficient for the Court to appoint successor CJA counsel and for that attorney to be oriented to the existing discovery-review system, without disturbing the trial date at all.

The age of the underlying events confirms that no true urgency exists. Mr. Wright's certification rests on events from January 2026 (the reverse proffer), March 2026 (the plea offer and Mr. Wright's resulting inquiry), and, at the latest, the June 12, 2026 hearing at which Mr. Robertson apologized to Mr. Wright. (Wright Cert. ¶¶ 16, 25, 38.) The conflict described here has been apparent to Mr. Wright for the better part of a year, and Defendant has known since well before this motion was filed that new CJA counsel would need to be identified. A defense team that has had months to plan for a transition, and that now has two more months before trial to complete it, has not shown the kind of urgency that could justify further delay.

### *B. The Discovery-Review Infrastructure Built Over Three Years Remains Available to Mr. Wright or Successor Counsel*

The presence of counsel with substantial, longstanding involvement in a case weighs heavily against a continuance. *United States v. Merlino*, 349 F.3d 144, 149-50 (3d Cir. 2003) (defendant not "left bereft of counsel" where lead attorney was disqualified but assistant counsel had long-term involvement in the case); accord *Sharif*, 2024 WL 3431475, at *2 ("the presence of competent co-counsel strongly counsels against further delay" where co-counsel had eleven months' involvement). The government understands that Mr. Robertson, who represented Defendant as CJA counsel since June 8, 2023 specifically to manage discovery, has since left the case, and it does not dispute that successor CJA counsel may need to be appointed. But Mr. Robertson's departure does not erase what three years of dedicated work produced. The review system, the forensic-hosting arrangement, and the work product his two-attorney team built — all keyed to the defense strategy Mr. Wright directed — remain in existence and available to be handed off. (Wright Cert. ¶¶ 12–14.) Onboarding successor counsel to an existing, already-organized review system built specifically for this case is a materially smaller undertaking than building one from nothing, and it is the kind of transition that courts routinely expect competent

counsel to accomplish in a matter of weeks. *See United States v. Savage*, 970 F.3d 217, 246-48 (3d Cir. 2020) (no constructive denial of counsel where substitute counsel appointed days before trial "inherited some work product" from predecessor counsel and represented that he would be ready to proceed). With two months remaining before the November 2, 2026 trial date, there is no basis to conclude that a properly resourced successor cannot be ready.

***C. This Seven-Year-Old Case Has Already Been the Subject of Numerous Continuances***

"The efficient administration of criminal justice" carries substantial weight against a continuance where, as here, a case has already received numerous ones. *United States v. Bittenbender*, 359 F. App'x 298, 299 (3d Cir. 2009) (quoting *United States v. Fisher,* 10 F.3d 115, 117 (3d Cir. 1993)) (denying continuance where defendant previously received numerous continuances); *Fisher*, 10 F.3d at 118 (affirming denial where "granting the continuance would have impaired the efficient administration of justice" and "the district court had already granted numerous continuances"); *accord Sharif*, 2024 WL 3431475, at *3. This case has been pending since April 2019 and has already seen a series of continuances and rescheduled trial dates, including the rescheduling described in Mr. Wright's own certification from June 15, 2026 to September 2026 (Wright Cert. ¶ 30 & Ex. B), and its further rescheduling since then to the current November 2, 2026 date.

***D. A Continuance Would Burden the Court's Calendar and the Public's Interest in Finality***

Finally, "trial judges must have certain discretion over . . . the exigencies of court administration," and "on occasion a defendant's right to counsel of choice may be moderated by a trial court's schedule." *Randolph v. Sec'y Pennsylvania Dep't of Corr.*, 5 F.4th 362, 374 (3d Cir. 2021); *see also United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991) (courts should consider "the rights of other defendants awaiting trial who may be prejudiced by a continuance"); *United*

*States v. Solina*, 733 F.2d 1208, 1211 (7th Cir. 1984) (district court "not required to allow a last-minute change in counsel to disrupt its schedule" where other competent counsel is available); accord *Sharif*, 2024 WL 3431475, at *3. Every one of these considerations counsels against a continuance here.

### 3. Mr. Wright's Admitted Unfamiliarity with Discovery Is Not Good Cause for a Continuance

Mr. Wright's alternative request — that, if new CJA counsel is not appointed, he be given "enough time to either develop a formula to manage and review the discovery . . . or get up to speed with the one put in place by Mr. Robertson" (Wright Cert. ¶ 45) — fares no better. Mr. Wright does not contend that the discovery was recently produced, that its volume increased unexpectedly, or that the government did anything to delay his review of it. He contends only that he personally delegated that task to Mr. Robertson's team more than three years ago and never learned how their review system works. (*Id.* ¶¶ 13–15.) That is a choice Mr. Wright made, not a circumstance imposed on him by the government or by the press of time.

A defendant who has had years to prepare is not entitled to further delay merely because his chosen division of labor leaves lead counsel less familiar with a particular workstream than the attorney assigned to it. *See Solina*, 733 F.2d at 1211; *Bittenbender*, 359 F. App'x at 299 (denying continuance where the case had already received numerous extensions). That is especially so here. Even though Mr. Robertson has since left the case, the discovery-review system he built over three years does not disappear with him, and the appropriate remedy for a gap in personnel is prompt appointment of successor CJA counsel to operate that system — not a continuance that excuses Mr. Wright from ever having to engage with a body of discovery he chose, years ago, to delegate to someone else. Nor does Mr. Wright explain why he did not raise his concern about his lack of understanding of the discovery in this case when Mr. Robertson notified the Court months ago that

he was leaving private practice. With two months remaining before trial, there is no reason successor counsel cannot be identified, appointed, and oriented to the existing system in the ordinary course. Mr. Wright's personal unfamiliarity with that system is not good cause for a continuance; it is, at most, a reason to promptly appoint someone who can run it.

**4. The Redacted Material is Not Discoverable, and the Limited Redactions Should Remain**

Defendant's request to compel production of his proffer statements in fully unredacted form (Wright Cert. ¶ 45) should be denied for a threshold reason: the redacted material is not discoverable in the first place. The government's obligation to disclose a defendant's own statements is defined by Federal Rule of Criminal Procedure 16(a)(1)(A) and (B), which require disclosure of "the substance of any relevant oral statement made by the defendant" in response to government interrogation and of "any relevant written or recorded statement by the defendant." Fed. R. Crim. P. 16(a)(1)(A), (B)(i)–(ii). The reports are the impressions of a law enforcement agent based on interviews with the Defendant, not a verbatim transcript of anything Defendant said.

Nor does the redacted material implicate the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), or *Giglio v. United States*, 405 U.S. 150 (1972). *Brady* requires disclosure of evidence "favorable to an accused" that is "material either to guilt or to punishment." *Id.* at 87. *Giglio* extends that rule to impeachment evidence bearing on the credibility of a government witness whose reliability "may well be determinative of guilt or innocence." 405 U.S. at 154. Information concerning separate, ongoing investigations into an uncharged individual is neither favorable nor material to Defendant's own guilt of the charged offenses, nor impeachment material bearing on a witness's credibility; it is, at most, information relevant to a different

investigative target's potential exposure, which neither *Brady* nor *Giglio* requires the government to disclose to Defendant.

Disclosure here would compromise separate, ongoing investigations into other individuals' potential criminal exposure without providing Defendant anything relevant to his own defense.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny Defendant's Omnibus Motion in its entirety. The Court should deny Defendant's continuance request, and, if the current conflict is not resolved, should disqualify Mr. Wright and consider appointing new counsel.

Respectfully Submitted,

ROBERT FRAZER
United States Attorney
District of New Jersey

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division
U.S. Department of Justice

*/s/ Darren C. Halverson*
By: DARREN C. HALVERSON
Assistant Chief
NICHOLAS K. PEONE
Trial Attorney
Health Care Fraud Section
National Fraud Enforcement Division
U.S. Department of Justice