THE LAW FIRM OF

**HUNT, HAMLIN & RIDLEY**

COUNSELLORS AT LAW

**FOUNDING PARTNERS**
RONALD C. HUNT
RAYMOND L. HAMLIN

TERRY RIDLEY
1956-2012

**ASSOCIATE COUNSEL**
YADIRA C. DURAN
DENNIS-HICKERSON-BREEDON

NEWARK OFFICE
MILITARY PARK BUILDING
60 PARK PLACE, 16TH FLOOR
NEWARK, NJ 07102

PATERSON OFFICE
418 GRAND STREET
PATERSON, NJ 07505

**ALL REPLIES TO THE NEWARK OFFICE**

TEL: (973) 242-4471
TELEFAX:(973) 242-8295
E-MAIL: iwright@HuntHamlinRidley.com
WEB SITE: www.HuntHamlinRidley.com

**OF COUNSEL**
ISAAC WRIGHT, JR.
VIELKA VELAZQUEZ
NOELLE VAN BAAREN
DAWN SANFILIPPO
ADAM C. BROWN
COURTNEY DURHAM

ǂALSO ADMITTED IN NY

September 27, 2026

**Via Electronic Filing**
Honorable Edward S. Kiel
United States District Court Judge
U.S. District Court of New Jersey
Martin Luther King Building
& U.S. Courthouse
50 Walnut Street,
Newark, NJ 07101

**Re: United States v. Creaghan Harry**
Criminal Case No. 19-246
Proposed CJA Counsel

Dear Judge Kiel,

The Government has filed a motion in limine. ECF No. 480. Please accept this letter in opposition thereto.

## I. COUNTER-INTRODUCTION

In the earlier part of 2019, a federal healthcare investigation tagged as Operation Brace Yourself, swarmed the country arresting countless individuals for violations of various criminal offenses. The offenses were almost always mirror

images of each other—medical fraud, AKS and money laundering. Like fisherman igniting dynamite in the water, the innocent were rounded up and charged along with the guilty. Informants and cooperators were then forged into tools designed make lawful acts appear criminal.

Contrary to the Government's narrative, Defendant owned a legitimate telemedicine company that provided services no different than some of the major telemedicine platforms operating today. Defendant's telemedicine company operated a proprietary audio/video platform that connected patients to licensed physicians across the country for medical consultation. Defendant spent hundreds of thousands of dollars on perfecting the company's proprietary platform as well as on legal advice needed to navigate him safely through the complex web of statutory and regulatory industry guidelines.

Defendant's telemedicine company generated revenue two different ways: (1) member subscriptions; and (2) Service fee payments from DME's for telemedicine services rendered to patients in need of medical consultation from a licensed physician. Defendant's company did not charge the patient for its services. Defendant's company did not bill Medicaid or Medicare for its services.

Defendant’s company was never paid a single penny from any Government entity for its services. Defendant’s company never made any referrals and never received any money in exchange for referrals. Defendant’s company provided one exclusive service that it was paid for—connecting the patient to the doctor for a private medical consultation. The money generated by Defendant’s company was exclusively for the telemedicine services rendered.

The Government also falsely claims that Defendant paid illegal kickback to doctors to prescribe braces. This claim is not just false, its bizarre. Every telemedicine company on earth pays its doctors directly out of the revenue they generate from patient fees, insurance reimbursements, or corporate contracts. The licensed doctors who provided consultations renders a service that requires payment. In this case, that payment was meager--around $35. The doctors’ decision to write or not write a prescription to the patient was based exclusively upon their medical assessment had absolutely nothing to do with the consultation service they were paid for—they received no additional compensation nor incentives for writing a proscription and no penalty or loss of payment or any other demotivating result for not writing a prescription.

Further, the Government's narrative that Defendant was responsible for $784 million in fraudulent claims to Medicaid and Medicaid is a delusion. Over the course of several years, Defendant's income totaled no more than $3.5 million—rendering the other $780.5 million unaccounted for and undocumented in any of Defendant's bank accounts or receipts.

Defendant is innocent of the charges against him. And the Government's instant motion is an attempt to prevent Defendant from successfully challenging the Government's case. To the point, the Government has filed a motion in limine requesting a laundry list of evidentiary rulings, in essence, requesting this Court to strip Defendant of the ability to raise anything remotely close to a defense. It audaciously moves to ensure this Court liquidate Defendant's cross-examination to nothing more than an exercise designed to allow the Government's case to go unanswered and uncontroverted. Indeed, its efforts to convince this Court to neutralize any chance for Defendant to defend himself are so outrageous, it can only be construed as an attempt to highjack the bench as a satellite table for the prosecution.

Defendant objects to the Government's use of the rules of evidence as a point-blank shotgun blast against his constitutional right to prepare a defense. For the reasons below, the Government's motion should be denied in all respects, directing the Government to interpose the evidentiary objections during trial so that this Court can make a proper admissibility analysis.

## II. STATUS OF THE CASE

The trial in this case is set for Monday, November 2, 2026. ECF No. 448. The Government indicates that its case is going to take 15 days after completion of jury selection.

Defendant will be presenting a "good faith" defense, an "advice of counsel" defense, an "element negating" defense, a "safe harbor" defense and a "general" defense to the charged offense. These defenses or a combination of them will be pursued during both the Government and Defendant's case. Defendant expects to call, at least, 5 witnesses during its case. It is estimated that those witnesses will take 2-3 days.

## III. COUNTER-BACKGROUND

Defendant disagrees with the indictment and the Government's

interpretation of the indictment to the extent that the charges and allegations against him in the indictment are false.

To the extent that a superseding indictment has been returned charging defendant with specific fraud, anti-kickback and tax offenses, Defendant agrees that those charges are reflected in the indictment and to that extent incorporates that information herein with reference. ECF No. 197.

## IV. EVIDENTIARY ISSUES AND COUNTER ARGUMENT

### A. The Government's Arguments for Preclusion Under Its **Subpoints A, B, C, E, F, I, K, M, N and O** Are Not Ripe for Review Until an Objection is Made at Trial and the Court Has an Opportunity to Analyze Admission Against the Backdrop of Evidence Already Introduced, Including the Reasons for Admission of Evidence at That Time—In Essence the Court Should Reserve on Those Subpoints.

Here, this Court must not fall into the trap of making evidentiary rulings that cannot be made in isolation but requires the benefits of a trial and reason for the evidence's admission at the time admission is sought. In as much as this is a complex case consisting of voluminous evidence, multiple interdependent defenses, technical regulatory and statutory schemes, including the testimony from both expert witnesses and coconspirator informants. Against this backdrop is the

reality that evidence which may be inadmissible for one reason may, nonetheless, be admissible for several other reasons under distinct rules of evidence.

To explain, a motion in limine permits "the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." See United States v. Tartaglione, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017); see also United States v. Hamdan, 537 F. Supp. 3d 870, 878-79 (E.D. La. 2021) ("[T]he purpose of a motion in limine is to prohibit [an opponent] 'from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.'" (quoting O'Rear v. Fruehauf Corp., 554 F.2d 1304, 1306 n.1 (5th Cir. 1977))).

District courts have "wide discretion in determining the admissibility of evidence under the Federal Rules." United States v. Abel, 469 U.S. 45, 54 (1984). "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary

trial interruptions." Bradley v. Pittsburg Bd. Of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990). See also Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995); Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994).

However, "[e]vidence should not be excluded pursuant to a motion in limine, unless it is clearly inadmissible on all potential grounds.... The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded." Leonard v. Stentech Health Scis., Inc., 981 F.Supp.2d 273, 276 (D. Del. 2013) (citations omitted).

Because, the Court must determine that the evidence sought to be precluded by the Government "is clearly inadmissible on all potential grounds," Tartaglione, 228 F. Supp. 3d at 406, this Court's ruling on a motion in limine is "subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer." Luce v. United States, 469 U.S. 38, 41-42 (1984). Therefore, this Court should "reserve judgment until trial

in order to place the motion in the appropriate factual context." Tartaglione, 228 F. Supp. 3d at 406] (citation omitted).

Here, most of the Government's evidentiary arguments are problematic because it requests precluding Defendant from introducing evidence in a factual vacuum, i.e., solely based upon the fact that Defendant has been charged in an indictment, accented with unproven opinion regarding what is going to be presented at trial and why—opinions that actually require precognition—a gift the Government does not possess.

For example, while "good" "lawful" or "non-corrupt" acts in one area may be inadmissible to prove innocence of an instant offense, those acts are otherwise admissible if they are relevant and introduced for an entirely different purpose. Carter v. Hewitt, 617 F.2d 961, 967 (3rd Cir. 1980). In the case at bar, one of the defenses Defendant will be pursuing is a "good faith" defense at trial. U.S. ex rel. Pogue v. Diabetes Treatment Centers, 565 F.Supp.2d 153, 23-24 (D.D.C. 2008) (citing United States v. Jain, 93 F.3d 436, 440 (8th Cir. 1996)("Courts do, however, recognize a good-faith defense to claims pursued under the AKS and FCA."). Those acts taken by Defendant in relation to the operation of the

telemedicine company that are "good" "lawful" or "non-corrupt" would be relevant and admissible to show that Defendant had a good faith belief that his conduct was lawful. Id. They may also be relevant as impeachment or clarification evidence.

Another anomaly inherent in the Government's position is that it is based upon Defendant providing evidence to prove his innocence. Consequently, Defendant has no such burden and, as a result, can offer relevant evidence of "good," "lawful" or "non-corrupt" acts in furtherance of his a "general defense" the charges at trial. See U.S. v. Ozsusamlar, 428 F.Supp. 2d 161, 168 (S.D. New York)(Indicating that aspects of a general defense can determine an evidence's relevance and can result in the admission or preclusion of evidence). In essence, all of the Government's preclusion arguments in subpoints A, B, C, E, F, I, K, M, N and O are of the same nature—they cannot be deemed inadmissible on all potential grounds without the benefit of a trial. Tartaglione, 228 F. Supp. 3d 402, 406

As previously stated, "[a] trial court considering a motion in limine may reserve judgment until trial in order to place the motion in the appropriate factual

context," id., and "a trial court's ruling on a motion in limine is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer,'" id. (quoting Luce, 469 U.S. at 41.).

Therefore, rather than prematurely speculate as to whether the preclusion of evidence in subpoints A, B, C, E, F, I, K, M, N and O of the Government's brief is admissible, this court should reserve ruling until trial. Id.

B. The Government's Request in **Subpoint D** to Preclude Defendant from Raising an Advice of Counsel Defense Should be Denied.

Defendant intends to rely on an advice of counsel defense at trial. The Government requests preclusion of such a defense because Defendant has not provided Notice nor any discovery related to that offense. The Government's position should be rejected.

In criminal cases, the thrust of an advice of counsel defense "is that the defendant, on the basis of counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent." United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1194 (2d Cir. 1989). The advice-of-counsel defense is a more specific form of the defense of good faith, available in limited circumstances in which a good faith instruction may otherwise be applicable. See,

e.g., United States v. Greenspan, 923 F.3d 138, 146 (3d Cir. 2019); The advice-of-counsel issue does not arise unless there are enough facts in the record to support the defense's prerequisites. Id. "Only after the defendant satisfies his burden of producing enough facts must the prosecution rebut this defense." Id. And the trial court decides whether the defendant has met his burden. Id. at 147.

However, while a defendant bears the burden of production, he bears no burden of persuasion; "[t]he prosecution is always responsible for proving the defendant's guilty state of mind." Id. (holding that district court erred by shifting burden of proof to defense). The advice-of-counsel defense requires a defendant to "introduce[] evidence that (1) 'he relied in good faith on the counsel's advice that his course of conduct was legal,' and (2) 'he made full disclosure of all material facts to his attorney before receiving the advice at issue.'" United States v. Gray-Burriss, 920 F.3d 61, 66 (D.C. Cir. 2019). By invoking the defense, the defendant waives attorney-client privilege and must therefore disclose to the government (1) all "communications or evidence" the defendant intends to rely on to establish the defense, and (2) any "otherwise-privileged communications" the defendant does

"not intend to use at trial, but that are relevant to proving or undermining" it. United States v. Crowder, 325 F.Supp.3d 131, 138 (D.D.C. 2018).

In the case at bar, Defendant spent hundreds of thousands of dollars in legal fees to acquire a business model was designed by counsel and to commission legal opinions as a blueprint upon which to run his business. In raising an advice of counsel defense, Defendant need not waive attorney-client privilege as the invocation of the advice of counsel defense acts as an automatic waiver of that privilege. Id.

Further, Defendant's witnesses have not provided any statements and Defendant has not written statements in his possession he intends to use at trial. Therefore, Defendant possesses no more evidence supporting his advice of counsel defense than that provided to Defendant by the Government in discovery—rendering the information already in the possession of the Government.[1] Simply, the Government already possesses all of the information available for Defendant to use in support of an advice of counsel defense. If the event Defendant comes in

[1] It should be noted that the Government has accumulated a vast amount of attorney-client privilege information through aggressive litigation of the crime fraud exception to the attorney client privilege. Defendant has, in his possession, no more information related to his advice of counsel defense than that of the Government.

possession of evidence that is not also in possession of the Government, it will be promptly turned that information over.

Although the Court has discretion in setting pretrial dates for notice of an advice of counsel defense, see Memory Bowl v. N. Pointe Ins. Co., 280 F.R.D. 181, 186 (D.N.J. 2012)(requiring defendant "to advise whether or not it intends to rely on an 'advice-of-counsel' defense" before trial to avoid "unnecessary delay or expense"), "it would be untenable-and, most likely, unconstitutional-to require Defendants to turn over potential evidence (most of which is currently privileged) to the Government or risk forfeiting a defense." United States v. Wilkerson, 388 F.Supp.3d 969, 974-75 (E.D. Tenn. 2019). See also United States v. Dallmann, 433 F.Supp.3d 804, 313 (E.D. Va. 2020)(ordering notice of defense ten days before trial, and discovery only thereafter); Crowder, 325 F.Supp.3d at 139 (setting deadline of two weeks before trial for notice and discovery).

As previously stated, here, the Government currently possesses all of the evidence Defendant intends to use in his advice of counsel defense. In the event, Defendant comes upon any evidence he intends to use at trial that the Government does not possess, he will promptly turn that information over. Therefore, because

the Government is already in possession of evidence supporting Defendant's advice of counsel defense and the trial in this case is not scheduled to begin until November 2, 2026, the Government will not be prejudiced by any advice of counsel defense noticed at this time and this Court should deny its request.

C. Defendant has No Objection to The Government's Request in **Subpoint G** to Use of Statements of Defendant Given During his Proffer, Limited to those Statements Disclosed to Counsel.

Defendant made certain statements as part of a proffer agreement. The Undersigned is not privy to most of those statements. Therefore, Defendant has no objection to the Government's use of the proffered statements in accordance with the terms of the proffer agreement to the extent such statements have been provided to defense counsel unredacted.

D. Defendant has No Objection to the Government's Request in **Subpoint H** to Preclude Evidence Related to Defendant's Potential Sentence, His Conviction and How It Would Effect His Life or Future Earnings Only to the Extent Defendant Is Specifically Introducing Such Evidence to Argue or Suggest that the Jury Should Nullify the Law.

Defendant does not intend to raise a nullification defense. Accordingly, Defendant has no objection to the Government's request to preclude the use of evidence related to Defendant's conviction or sentence in support of any defense or

argument that the jury should nullify the law. Defendant objects to preclusion in all other respects.

E. The Government's Request in **Subpoint J** to Preclude Defendant from Presenting a Safe Harbor Defense is Not Only Contrary to Law, But It is Impermissibly Based Upon a Self-Serving Pre-Trial Narrative as Opposed to Evidence Introduced at Trail.

Little comment is necessary under this point. A safe harbor defense is a statutory defense that is affirmative. United States v. Vernon, 723 F.3d 1234, 1271 (11th Cir. 2013)(holding that the jury reasonably rejected the safe-harbor affirmative defense); United States v. Ekwebelem, 669 F.App'x 868, 868 (9th Cir. 2016) (affirming that the safe-harbor provision is an affirmative defense and rejecting the need for the government to negate all enumerated safe-harbors).

This Court does not have the authority to preclude Defendant from raising a safe harbor defense merely because the Government has made a pretrial interpretation of the statute and evidence in its favor. Indeed, that is not the standard for determining whether a safe harbor offense is allowed. The standard is academic that "[o]nce the government establishes the elements of a violation of the [AKS], the burden shifts to a defendant to demonstrate by a preponderance of the evidence that [his] conduct fell within the safe harbor provision of the

statute." United States v. George, 900 F.3d 405, 413 (7th Cir. 2018)(citing United States v. Jumah, 493 F.3d 868, 873 (7th Cir. 2007) and United States v. Vernon, 723 F.3d 1234, 1269-71 (11th Cir. 2013).

Thus, this Court cannot preclude Defendant from raising a safe harbor defense but must provide him an opportunity to raise such a defense upon the Government's successful establishment of an AKS offense. Id.

F. The Government Has Not Met Its Burden to Establish Admissibility of Summary Exhibits under Rule 1006 as Requested in **Subpoint L**.

The Government claims that Defendant is in possession of the Summary Exhibit it now requests to be admitted at trial. The undersigned counsel, however, has no recollection of ever receiving that exhibit and, if sent by the Government, has not been able to locate said exhibit.

Nevertheless, the Government has not satisfied its burden related to admissibility under Rule 1006. Federal Rule of Evidence 1006 permits a party to "use a summary, chart, or calculation to prove the content of voluminous writings…that cannot be conveniently examined in court," where the summary would be helpful to the jury. See United States v. Bansal, 663 F.3d 634, 668 (3d

Cir. 2011). Rule 1006 summaries are admissible only if they rely upon admissible materials, United States v. Pelullo, 964 F.2d 193, 204 (3d Cir. 1992), and must be supported by a foundation showing that the exhibit is an accurate summary of the underlying materials, Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d 292, 301 (3d Cir. 1961).

Testimony concerning the "authenticity and accuracy" of a summary may be provided by a person who supervised its preparation or carefully reviewed its content. United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979). Here, the Government merely reasons that "[e]ach of the United States' planned summary exhibits summarize relevant, admissible evidence to prove the charges in the superseding indictment" and that the "exhibits will summarize voluminous bank records, tax records, and claims data from health care benefit programs." Gov. br. at p. 24.

This conclusory statement is a far cry from the required foundation showing that the exhibits are an accurate summary of the underlying materials it represents and that the underlying materials are authentic and would be admissible. Pelullo, 964 F.2d at 204. Further, a mere mention of the summary exhibit with no

indication of its accuracy, its impact or whether it mitigates prejudice by displaying neutrality. Does the information contain argumentative labels? Does it spin or make impermissible assumptions not found in the source text?

The Government request admissibility of a summary exhibit that the Government has made no showing that the information contained is not designed as an impermissible or prejudicial ambush. In as much as the Government has not satisfied its burden for admission of its summary exhibits under Rule 1006, its request should be denied.

## V. CONCLUSION

For all the reasons given above, this Court should deny the Government's evidentiary request or reserve its ruling until trial, with the exception of those requests Defendant has not opposed—subject to the limitation of Defendant's concessions.

Respectfully submitted,

s/Isaac Wright, Jr., Esq.
Attorney ID #015092008