**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,
v.
CREAGHAN HARRY, Defendant.

Crim. No. 1:19-cr-246 (ESK)
Hon. Edward S. Kiel, U.S.D.J.

**DEFENDANT'S MOTION FOR A JURY INSTRUCTION ON THE ANTI-KICKBACK STATUTE'S PERSONAL SERVICES SAFE HARBOR**

On November 4, 2026, the Court ruled that the safe harbor "is a legal issue that should be presented by motion." Tr. 331:14-16 (Nov. 4, 2026). This is that motion. Defendant asks the Court to:

(1) instruct the jury on the personal services safe harbor, 42 C.F.R. § 1001.952(d), as to Counts 2 through 5 and the kickback objects of Count 1;

(2) instruct the jury that the Government must prove beyond a reasonable doubt that a payment was not within the safe harbor;

(3) permit factual questions about the written agreements and how compensation was set, without asking any witness for a legal conclusion; and

(4) give the instruction in Attachment A, which Defendant offers in place of Request 4 of his earlier proposed instructions (ECF 502).

## I. DEFENDANT IS ENTITLED TO THE INSTRUCTION.

The anti-kickback statute "shall not apply to . . . any payment practice specified by the Secretary in regulations." 42 U.S.C. § 1320a-7b(b)(3)(E). The personal services regulation provides that "'remuneration' does not include any payment made by a principal to an agent as compensation for the services of the agent," when its standards are met. 42 C.F.R. § 1001.952(d)(1). "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). In this Circuit, "[a] defendant is entitled to a theory of defense instruction if (1) he proposes a correct statement of the law; (2) his theory is supported by the evidence; (3) the theory of defense is not part of the charge; and (4) the failure to include an instruction of the defendant's theory would deny him a fair trial." *United States v. Hoffecker*, 530 F.3d 137, 176 (3d Cir. 2008) (quotation omitted). Each requirement is met.

**Correct statement of the law.** Attachment A tracks the text of § 1001.952(d)(1) standard by standard. Courts instruct juries on this safe harbor in anti-kickback trials. *United States v. Novak*, 856 F.3d 1117, 1125 (7th Cir. 2017) ("The jury was properly instructed on the application of these safe harbor provisions . . . .").

**Supported by the evidence.** Part II below sets out the evidence, much of it introduced by the Government itself.

**Not part of the charge.** The Government's proposed kickback instructions do not mention the safe harbor at all. ECF 525, Requests 20, 21 and 29.

**A fair trial requires it.** The Government has already put the term before the jury. GX 892, admitted through Douglas Gass, refers to being "paid fair market value (under a safe harbor)." Tr. 511:23-512:11 (Nov. 5, 2026). GX 849, the ProCall invoices admitted through Elliot Loewenstern (Tr. 1302:25-1303:5 (Nov. 13, 2026)), bills week after week for "BPO Call Center Services as part of the Safe Harbor Agreement" at an "Hourly Rate based on fair market value." GX 849.002. The jury has heard "safe harbor" repeatedly and has never been told what it means. A jury asked whether payments were unlawful, but never told which payments the law excludes, cannot fairly decide the charges.

## II. THE EVIDENCE SUPPORTS THE SAFE HARBOR.

The safe harbor applies when the agreement is in writing and signed, covers and specifies the services, runs at least one year, and sets the compensation methodology in advance, consistent with fair market value and not determined by the volume or value of referrals, and when the services are lawful and reasonably necessary. 42 C.F.R. § 1001.952(d)(1)(i)-(vi). The trial record supports each standard.

**Signed written agreements specifying the services.** The Government introduced the signed Call Center Services and Outsourcing BPO Agreement and statement of work with Telemedex, transmitted with "signed docs." GX 810; Tr. 878:2-879:5 (Nov. 10, 2026). It describes the services to be provided. Tr. 881:1-8. The countersigned agreements were returned by ProCall. GX 814 ("Countersigned Agreements"); Tr. 892:1-22 (Nov. 10, 2026).

**A term of at least one year.** The statement of work is for a one-year renewable term. Tr. 886:14-16. The company enforced that term: a client who cancelled could not return until the one-year anniversary. DX-948 (Aug. 19, 2017).

**Compensation set in advance at fair market value.** The agreement fixes the fee at $25 per hour with a minimum of 200 hours per week, billed weekly in advance. Tr. 881:10-15; 886:4-12. Every invoice in GX 849 bills at an "Hourly Rate based on fair market value," and the prepaid weekly minimum appears throughout GX 835 and GX 879 (admitted Tr. 906, 911 (Nov. 10, 2026)). Clients were told that "because of Safe Harbor Laws, the agreement is for call center hours," for effort and not result. DX-950 (Aug. 29, 2017).

**Payment that did not depend on outcome.** The physicians who performed the consultations were paid a flat fee per consultation "regardless of whether or not medication is prescribed," and were required to speak with each patient. GX 898; Tr. 389:6-14; 413:17-24; 414:1-415:16; 416:3-9 (Nov. 5, 2026). The Government's medical expert agreed that paying a physician the same flat fee whether or not he prescribes is good practice. Tr. 308:8-18; 322:3-9 (Nov. 4, 2026).

Whether each standard was met is a question of fact for the jury, properly instructed. *Mathews*, 485 U.S. at 63; *Novak*, 856 F.3d at 1125. DX-948 and DX-950 are offered to show how the arrangement was structured and Defendant's state of mind.

## III. THE GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT THAT A PAYMENT WAS NOT WITHIN THE SAFE HARBOR.

The regulation does not create an excuse for unlawful remuneration. It defines what "remuneration" is. A payment that meets the safe harbor is not "remuneration" at all. 42 C.F.R. § 1001.952(d)(1). Remuneration is an element of every kickback offense charged here. ECF 525, Requests 20, 21 and 29. A defense that negates an element cannot be placed on the defendant. The government "is

foreclosed from shifting the burden of proof to the defendant . . . 'when an affirmative defense does negate an element of the crime.'" *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *Martin v. Ohio*, 480 U.S. 228, 237 (1987) (Powell, J., dissenting)). And when an exception in a criminal statute is what separates wrongful conduct from innocent conduct, once the defendant produces evidence that the exception applies, "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." *Ruan v. United States*, 597 U.S. 450, 457 (2022). The safe harbor is exactly that kind of line. A payment for services under a written, year-long, fixed-rate agreement at fair market value is lawful; the same payment outside the safe harbor may not be.

The safe harbor also bears directly on willfulness, which the Government must prove in every kickback count: that Defendant acted with knowledge that his conduct was unlawful. *Bryan v. United States*, 524 U.S. 184, 191-92 (1998). A jury cannot fairly decide whether Defendant knew his conduct was unlawful without being told what the law permits.

## IV. THE EXAMINATION WILL BE FACTUAL.

Consistent with the Court's rulings, Defendant will ask witnesses only whether they are familiar with the safe harbors and factual questions: whether an agreement was written and signed, its term, who set the rate and when, and whether pay changed when a prescription was or was not written. No witness will be asked whether any arrangement is lawful or qualifies for a safe harbor. Tr. 331:14-332:8 (Nov. 4, 2026).

## CONCLUSION

Defendant respectfully asks the Court to enter the attached proposed order and, at the charge conference, to give the instruction in Attachment A.

Dated: November 21, 2026

Respectfully submitted,

Creaghan Harry, Defendant

**ATTACHMENT A**
**DEFENDANT'S PROPOSED INSTRUCTION – PERSONAL SERVICES SAFE HARBOR**

The law that makes it a crime to solicit, receive, offer or pay remuneration for referrals does not apply to certain payments described in federal regulations, often called "safe harbors." A payment made by a business to a person or company it engaged to provide services is not remuneration under that law if all of the following were met:

(1) the agreement was in writing and signed by the parties;

(2) it covered and specified the services to be provided;

(3) its term was at least one year;

(4) the method of determining the compensation was set in advance, was consistent with fair market value in an arm's-length transaction, and was not determined in a manner that takes into account the volume or value of any referrals or business generated between the parties that is paid for by Medicare or another federal health care program;

(5) the services did not involve promoting any activity that violates state or federal law; and

(6) the services did not exceed what was reasonably necessary for a commercially reasonable business purpose.

If there is evidence that a payment met these requirements, the government must prove beyond a reasonable doubt that it did not. If the government has not done so, you must find the defendant not guilty of any charge based on that payment.

An arrangement that does not meet every requirement is not for that reason unlawful. You must still decide whether the government proved every element of the offense beyond a reasonable doubt. In deciding whether the defendant acted willfully, you may consider evidence about how compensation was set, whether it reflected fair market value, and whether it changed with referrals, prescriptions or orders.

*Sources:* 42 U.S.C. § 1320a-7b(b)(3)(E); 42 C.F.R. § 1001.952(d)(1); *Mathews v. United States*, 485 U.S. 58, 63 (1988); *United States v. Hoffecker*, 530 F.3d 137, 176 (3d Cir. 2008); *Smith v. United States*, 568 U.S. 106, 110 (2013); *Ruan v. United States*, 597 U.S. 450, 457 (2022); *Bryan v. United States*, 524 U.S. 184, 191-92 (1998); *United States v. Novak*, 856 F.3d 1117, 1125 (7th Cir. 2017); Third Cir. Model Crim. Jury Instr. 5.05, 5.07.